[No. 14089.  Department One.  October 17, 1917.]

## JONES, ROSQUIST, KILLEN COMPANY, *Respondent*, v. JOHN NELSON *et al., Appellants.*[1]

EVIDENCE — PAROL EVIDENCE TO VARY WRITING — CONSIDERATION. Parol evidence that the actual price of a piano was $275 of which $75 was paid and $200 was to be paid in installments is admissible in explaining the consideration of a sales contract reciting that the total purchase price was $425 and that $225 had been paid leaving $200 to be paid in installments; the recital of the payment of $225 amounting only to a receipt that was open to contradiction.

SALES — ACTION FOR PRICE — BREACH. Failure to make the initial payment upon a piano is an immediate breach of a contract which gives a right of action for the whole price upon failure to perform any of the conditions, and authorizes suit before default on any deferred installments.

HUSBAND AND WIFE — AGENCY OF WIFE — EVIDENCE — SUFFICIENCY. Findings that a wife's purchase of a piano was without the knowledge or consent of the husband and that the seller was not led to believe that she was acting as his agent are sustained where it appears that, on the preceding day, the husband and wife inspected pianos and declined to purchase, and that the wife made the purchase the next day, informing the seller that her husband did not know of her visit and that she wished to consult him, and she notified the seller next day that she did not want it.

APPEAL — REVIEW — FINDINGS. Upon trial *de novo*, findings upon conflicting evidence, though entitled to great weight, will be reversed if against the clear preponderance of the evidence.

HUSBAND AND WIFE — COMMUNITY OR SEPARATE DEBTS — CONTRACTS OF WIFE. Under Rem. Code, § 5917, giving the husband the management and control of the community property, a wife's purchase of a piano is presumptively her separate contract and does not bind the husband unless authorized or ratified.

SAME — LIABILITY FOR DEBTS — "FAMILY EXPENSES." The purchase of a piano by a wife is not a "family expense" within Rem. Code, § 5931, making family expenses chargeable against the property of both or either of them, where it was never received or used by the family, but left on their porch under protest and orders to remove it; in view of Id., § 5917, giving the husband the management and control of the community personal property, and Id., § 5927, providing that the wife may make contracts and incur liabilities as if unmarried.

[1] Reported in 167 Pac. 1130.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered December 9, 1916, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed as to one defendant; reversed as to the other.

*Louis E. Shela*, for appellants.

ELLIS, C. J.—Plaintiff corporation brought this action against defendants, John Nelson and wife, to recover the purchase price of a piano, alleged to have been sold to them under the following contract:

"I, we and each of us promise to pay to the order of Jones, Rosquist & Killen, the sum of two hundred ($200) dollars, at their office in Seattle, Washington, as follows: $25.00 (twenty-five dollars) per month on the 5th day of each and every month thereafter until fully paid, commencing on the 5th day of May, 1916, with interest on the amount unpaid at the rate of eight per cent per annum, payable monthly.

"This note is given for the purchase of a 'Christman' piano, style 2758 (receipt of which instrument is hereby acknowledged) the total amount of said purchase price being four hundred twenty-five ($425) dollars, of which I have this day paid $225 and I agree that I will keep the said instrument in good order, and that it shall not be removed from No. 634 west 54th street, in the city of Seattle, county of King, state of Washington, without the written consent of the said Jones, Rosquist, Killen Co., Inc., and the legal title thereto is in the said Jones, Rosquist, Killen Co., Inc., and shall remain in said Jones, Rosquist, Killen Co., Inc., until they shall make bill of sale and dispose of same to me after all payments aforesaid shall have been fully paid, and that I have no right to dispose of or encumber said instrument in any way until I have received bill of sale.

"I also agree that if I fail to pay any of said installments when due, or fail to perform any of the conditions herein, or if said instrument be attached or levied upon or should I refuse to accept delivery of or return the said instrument, all of said sum, $200, shall, in any of said cases, at the option of said Jones, Rosquist & Killen, immediately become due and payable, and the said company may enforce payment of the

entire sum then unpaid, and interest thereon, or may, if its agents or assigns so elect, rescind this note and take possession of the said instrument without legal process, and for the purpose may enter any premises where the same may be; all damages for entry being hereby expressly waived and all money paid by me on account of this note shall in the event of said instrument being repossessed by said Jones, Rosquist & Killen, its agents or assigns, be considered as rent for the use of said instrument for the time same was in my possession.

"I also covenant and agree to pay all taxes, assessments and liens of every kind which by law may become due and payable on said instrument; also all taxes which may be levied or imposed on this note, and at my own expense to keep insured against loss by fire for the full insurable value, the said instrument during the existence of this debt, in a reliable insurance company, with loss, if any under said insurance, payable to Jones, Rosquist & Killen, and to deliver the policy and renewals thereof to the said Jones, Rosquist & Killen, and if I shall fail to pay taxes, assessments or insurance herein provided to be done, the said Jones, Rosquist & Killen, or assigns, shall have the option to pay same and the payment so made shall be added to and become a part of the amount due herein.

"In all matters mentioned herein, time is declared to be the essence of this note. In case this note or any portion thereof is placed in the hands of an attorney for collection, or in case action is instituted to collect same or any portion thereof, I hereby agree to pay such additional sum as may be necessary and reasonable to pay the expenses of said collection and a reasonable attorney's fee for instituting such action.

"In Witness Whereof we have set our hands to this note this 5th day of April, 1916.

"(Signed)   Ingeborg Nelson.

"Witness: Mrs. Anna Myhre.

"Accepted: Jones, Rosquist, Killen Co., Inc.,

"By G. W. Rosquist."

Defendants answered separately. Ingeborg Nelson set up rescission as an affirmative defense. John Nelson denied that the contract was signed in his behalf or in behalf of the community, and set up, as an affirmative defense, that the

piano was left on the porch of his residence during the absence of the family on April 7th, 1916; that he notified plaintiff to remove it, otherwise storage would be charged; that the plaintiff neglected to remove it, and that a reasonable storage charge is five dollars per month. Judgment was asked for the accrued charges and that they be declared a lien on the piano. When the cause came on for trial, defendants demurred on the ground that the action was prematurely brought, and that the complaint did not state a cause of action. These demurrers were overruled. The cause was tried without a jury, and, on findings made in favor of plaintiff, judgment was entered against defendants, and each of them, in the sum of $309.40, and costs. Defendants appeal.

It is first contended that the court erred in admitting parol evidence to vary the written contract. This is based on the fact that the written contract, made a part of the complaint, recites that there are $200, unpaid balance of the contract price, payable in monthly installments of $25, beginning May 5, 1916, while it was further alleged that the sale price of the piano was $425, but that appellants were given credit for $225 in consideration of a cash payment of $75; that five dollars was paid when the contract was signed, with a promise to pay the balance of $70 on the following day. The evidence showed that the written contract was drawn with the understanding that the actual price of the piano was $275, of which sum $75 was to be paid at once, and the remaining $200 in installments as in the writing provided. This evidence in no way tended to vary the legal effect of the written contract. It merely explained the consideration, thus falling within a generally recognized exception to the rule against varying a written instrument by parol. Jones, Blue Book of Evidence, § 468; *Don Yook v. Washington Mill Co.,* 16 Wash. 459, 47 Pac. 964; *Van Lehn v. Morse,* 16 Wash. 219, 47 Pac. 435. Moreover, the recital that $225 had been paid amounted to nothing more than a receipt, and, as such,

was open to explanation by parol testimony. *Gronning v. Elliott Bay Mill & Lumber Co.*, 61 Wash. 676, 112 Pac. 937.

In this connection it is further argued that, inasmuch as the written contract shows that the first payment was not due until May 5th, the action, which was brought on April 25th, was premature. We find no merit in this claim. The contract gives a right of action for the whole purchase price in case of failure of purchasers to perform any of its con-ditions. One of the conditions being an initial payment of $75, failure to pay that sum would be an immediate breach, in case of delivery and acceptance of the piano, and would warrant suit without waiting for a default as to subsequent installments.

The second contention is that the wife was not authorized by the husband to sign the contract, hence has no power to bind him or the community. The evidence shows that appel-lants were contemplating the purchase of a piano and, on April 5, 1916, visited many piano stores on a tour of in-spection, and finally that of respondent, where they were favorably impressed with the offer of a Christman piano of the asserted value of $425 at a discount of $150, to be had on a cash payment of $75 and monthly installments of $25 each for the balance of $200. A form of contract was shown them, but the evidence is conflicting as to whether appellants then read it or not. Certain it is that they declined to sign it and close the deal. The husband testified that he said to the salesman, "Well, if we decide on your piano we can let you know." In this he is corroborated by the wife, who tes-tified, "We didn't make any arrangements to buy; we just looked around. We didn't give Mr. Rosquist any special remark about buying it. Just think it over, and that is all we promised when we left him in the evening." Rosquist, a member of the respondent corporation, testified:

"They decided on a piano that night and I wrote out a contract and the payments, and filled that out. And Mr. Nelson read the contract over and I said 'You had better fix

it up tonight and get it through.' Nelson said 'We'd better sleep over it. We haven't any money tonight and my wife will be in tomorrow and settle it up.' So that the following day Mrs. Nelson came in and signed the very same contract that Mr. Nelson had read over, that I had filled out."

It appears from the evidence that Mrs. Nelson, without any consultation with her husband, visited respondent's store on the following day, signed the contract and paid five dollars down. She hesitated to close the deal, telling Rosquist she wanted further to consult her husband, who knew nothing of her visit to the store. Rosquist admitted that she made this statement before signing the contract. On his representations that if she did not close the deal at once she might lose the piano, as there was great probability of its being sold that day, she finally signed the contract. When her husband returned home that night he told his wife that he had bought a piano at another store, and on learning of her act, he said:

"Why did you do it without my being present? The best thing you can do is to go right down to Rosquist's store and call the buy off, and tell Rosquist I did not want to sign for his piano."

Mrs. Nelson next day told Rosquist that she did not want the piano, as she and her husband were going to move to California—an admitted falsehood, but, as we view it, wholly immaterial.

It is apparent from this evidence that the purchase by the wife was made without the knowledge, consent or approval of the husband, and that Rosquist was in no wise misled into a belief that the wife was acting as the husband's agent. Rosquist himself testified that the husband declined to sign the contract because he wanted to sleep over it. He admitted that he was informed by the wife, upon her reappearance at the store, that she would rather not sign until she took the matter up with her husband, who knew nothing about her present trip. That admission seems to us conclusive on this

phase of the case, notwithstanding her subsequent prevarication. Moreover, the fact that the husband on the same day bought a piano elsewhere strongly confirms his statement that he had not authorized his wife to sign the contract. The cause being here for trial *de novo*, we must weigh the evidence. Though the findings of the trial court are entitled to great weight, they cannot prevail against what we conceive to be a clear preponderance of the evidence. Under our statute (Rem. Code, § 5917) the husband has the management and control of the community personal property. We have held in a number of cases that contracts made by the wife alone are not binding upon the husband nor the community, unless authorized, ratified, or acquiesced in by the husband. The presumption is that the wife's contract was hers alone. See *Balkema v. Grolimund*, 92 Wash. 326, 159 Pac. 127; *McAlpine v. Kohler & Chase*, 96 Wash. 146, 164 Pac. 755. There was no evidence sufficient to overcome this presumption.

The court found that the purchase of the piano by the wife and the payment by her of five dollars of community funds was a "family expense." Rem. Code, § 5931, provides:

"The expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately."

This court has had but few occasions to construe the term "family expense." In *Russell v. Graumann*, 40 Wash. 667, 82 Pac. 998, we held that medical and hospital services rendered to a spouse during the last illness would constitute such an expense. In *Butterworth & Sons v. Teale*, 54 Wash. 14, 104 Pac. 768, it was intimated, but not decided, that burial expenses of a deceased spouse might come within the scope of that term. In *Hector v. Hector*, 51 Wash. 434, 99 Pac. 13, the maintenance and support of a minor child was recognized as an obligation for which divorced spouses were both

liable.  In *Strom v. Toklas*, 78 Wash. 223, 138 Pac. 880, the rental of a dwelling house occupied by a family was held to be within the statute.  Statutes substantially the same as ours are found in Iowa, Illinois, Oregon and Colorado, but in those states there is lacking the feature of our community law which gives the husband the management and control of community property.  In those states, the courts hold that almost anything purchased for the use of the family or its members constitutes a family expense for which either or both spouses may be held.  But through those decisions runs the distinguishing thread that the article must have been not only purchased for family use, but actually used by the family, in order to impose the statutory liability.  See *Sherman v. King*, 51 Iowa 182, 1 N. W. 441; *Fitzgerald v. McCarty*, 55 Iowa 702, 8 N. W. 646; *Watkins v. Mason*, 11 Ore. 72, 4 Pac. 524; *Gilman v. Mathews*, 20 Colo. App. 170, 77 Pac. 366; *Straight v. McKay*, 15 Colo. App. 60, 60 Pac. 1106; *Hyman v. Harding*, 162 Ill. 357, 44 N. E. 754.

In *Dodd v. St. John*, 22 Ore. 250, 29 Pac. 618, 15 L. R. A. 717, it is said:

"What are expenses of the family must be determined according to the facts of each particular case, as it shall be presented.  In many cases the question must be determined by the use made of the article purchased.  If the article was purchased and brought into the family, and used there, it is a family expense."

In the state of Iowa, where the courts go to the extreme limit in applying the "family expense" statute, there was under consideration in the case of *Fitzgerald v. McCarty, supra*, an instruction of the trial court that:

"The only criterion in ascertaining what is a 'family expense' is the determination of the question whether an expenditure was for the family; was it incurred for, on account of, and to be used in, the family?"

Disapproving this instruction, the supreme court said:

"In the case at bar we think the instruction should have gone one step further, and the jury instructed it was essen-

tial to constitute a family expense the thing for which the expenditure was incurred should have been used or kept for use in the family. . . . Under the instruction given it is sufficient if an article was purchased for, on account of, and with the intent to be used in the family, although never used therein or by any member of the family. We do not think this is the intent of the statute."

The evidence in the present case shows that the piano was never received nor used by the family. It was left on their porch against their protest, and respondent was ordered by them to remove it on pain of being charged for storage. If we grant that the purchase by one spouse of an article for family use, but never actually used in the family, may be sufficient under the statute to create a joint liability of the spouses, we are still confronted by our community property law which makes the husband the sole manager in matters affecting community personalty. If the piano had been used in the home with the acquiescence of the husband, we may assume that the community would have been rendered liable on the ground of ratification, but there is nothing of the kind here. The respondent is attempting to hold the husband for a piano purchased by the wife without his consent, and which was never brought into the home and used there. This case does not come within the statute applying to family expenses, but rather falls under Rem. Code, § 5927, which declares that:

"Contracts may be made by a wife, and liabilities incurred, and the same may be enforced by or against her to the same extent and in the same manner as if she were unmarried."

The last contention of appellants is that the court erred in refusing to find that respondent made an oral agreement with Mrs. Nelson to rescind the contract for the sale of the piano. We shall not discuss the evidence bearing on the subject, further than to say that, in our opinion, the court was justified in refusing to find as requested.

We are clear that the contract in question was neither the contract of John Nelson nor so authorized or ratified by him

as to bind the community. As to Ingeborg Nelson, the judgment is affirmed. In all other respects it is reversed. John Nelson may recover his costs.

MORRIS, WEBSTER, MAIN, and CHADWICK, JJ., concur.