[No. 23890. Department One. December 27, 1932.]

SEABOARD SECURITIES CO., INC., *Respondent*, v. STEPHEN
BERG, *Defendant*, INTERNATIONAL & INDUSTRIAL
SECURITIES CORPORATION, *Appellant*.[1]

[1]Reported in 17 P. (2d) 646.

*Arthur G. Cohen, R. P. Oldham,* and *Battle, Hulbert & Helsell,* for appellant.

*Grinstead, Laube, Laughlin & Meakim, L. C. Brodbeck,* and *Frank A. Garbe,* for respondent.

HOLCOMB, J.—This appeal is by intervenor, whose complaint in intervention was in the nature of a complaint for claim and delivery or replevin of the furniture, furnishings and equipment and other personal property installed in the Bergonian hotel in Seattle. After a trial to the court without a jury, the complaint of appellant in intervention was dismissed upon several grounds.

Stephen Berg, having a long-term lease on certain real estate in Seattle, erected thereon a hotel building, and on February 25, 1927, concluded negotiations with Albert Pick & Co., of Chicago, Illinois, for certain furniture, furnishings and equipment for the hotel.

A preliminary agreement was entered into between Berg and Pick & Co., on February 25, 1927, which, among other things, provided:

"This proposal, as accepted and approved, shall constitute the entire agreement between the buyer and the seller, and no change in or modification of this agreement shall be binding upon the seller, unless such change or modification shall be in writing and approved by an executive of the seller, either attached to or endorsed on this agreement."

By the contract, Albert Pick & Co., the seller, agreed to sell and ship to Berg, the buyer, furniture and furnishings for $98,665.49 cash, or $113,085.24 on credit

as follows: $30,000 to be paid before shipment of the goods, and the balance in monthly installments evidenced by thirty-six promissory notes. The printed form provided:

"Said notes to be secured by a chattel mortgage or, at the option of the seller, by conditional sales contract upon said merchandise, in the form or forms used by the seller."

There was an attached supplementary agreement which provided: "Said notes to be secured by a conditional sales contract upon said merchandise on forms used by the seller."

This contract further provided that the "Lien of the seller shall be superior to any and all liens on said merchandise," and that

"Title to said merchandise shall remain in the seller until the making of said cash payments and the execution and delivery to the seller of said notes, and of the chattel mortgage or conditional sales contract securing the same."

Pursuant to this preliminary contract, and prior to the shipment of any such furniture and equipment, Berg paid to Albert Pick & Co. the sum of $30,000. Subsequently, he paid on the contract an additional sum of $28,500. Shipments of equipment and furniture arrived in Seattle the latter part of May or early in June, 1927. Albert Pick & Co. forwarded to the National City Bank, of Seattle, order bills of lading covering shipments, together with thirty-six notes and a chattel mortgage, with instructions to deliver the bills of lading to Berg upon his executing the notes and mortgage. The letter of instructions to the bank stated:

"We have sold to Mr. Stephen Berg, doing business as Bergonian Hotel, . . . a bill of merchandise amounting to $117,860.53, upon which the amount of $30,000 has been paid. The balance of $87,860.53 is

represented by a series of thirty-six notes secured by our form of chattel mortgage. . . ."

At the request of Berg, who did not wish the consideration for the furniture and equipment to be made a matter of public record, that the security be in form of a conditional sales contract rather than a chattel mortgage, Albert Pick & Co., on June 9, 1927, wired its Seattle attorneys instructing them to prepare a conditional sales contract, as requested by Berg, using the same merchandise rider describing the furniture and equipment that had been attached to the chattel mortgage, and wherever the words chattel mortgage had been used to substitute conditional sales contract.

A form of conditional sales contract was accordingly executed by Berg on June 11, 1927, and filed with the county auditor on June 13, 1927. The notes executed by Berg on June 1, 1927, originally contained the following:

"This is one of a series of thirty-six notes and is secured by a chattel mortgage of even date herewith on personal property in Seattle, Washington."

This clause, with the consent of both parties, was changed to conform to the substituted contract as follows:

"This is one of a series of thirty-six notes evidencing unpaid purchase price on conditional sales contract of personal property in Seattle, Washington."

This contract, whatever it was, did not contain an affidavit of good faith, was not acknowledged, and was not filed or recorded as a chattel mortgage.

On December 2, 1927, Berg and Albert Pick & Co. entered into a supplemental agreement extending the time of certain payments provided for in the conditional sales contract and accelerating such payments in case of default, and also preserving "the conditional sale contract" in full force and effect.

Respondent, having loaned to Stephen Berg $100,000 upon his note, procured a mortgage from him upon the leasehold, building, furnishings and equipment in the Bergonian hotel. Thereafter, Berg defaulted on a prior mortgage, thereby compelling respondent, in order to protect its mortgage, to pay on the prior mortgage the sum of $48,000. On January 19, 1928, Berg and his wife executed and delivered their note to respondent in the sum of $150,000, secured by a mortgage on the leasehold and building and upon all of the mortgagor's right, title and interest in and to the furniture, furnishings and equipment and other personal property installed in the Bergonian hotel. This was filed, both as a real estate and a chattel mortgage, on January 20, 1928.

The present action was originally begun by respondents to foreclose that mortgage, and judgment of foreclosure was entered in this action.

The record further shows that Albert Pick & Co. and Albert Pick-Barth Co., which all parties agree was a holding company and is identical with Albert Pick & Co., entered into a general financing written agreement on January 30, 1928, under the terms of which Albert Pick & Co. sold and transferred to appellant notes, chattel mortgages, conditional sale contracts and commercial paper. Under this agreement, the notes and conditional sale contract executed by Berg were sold and assigned to appellant.

There was some controversy at the trial as to whether the transaction between Albert Pick & Co. and appellant constituted a pledge or a sale. The trial court correctly held that question to be immaterial, in view of Rem. 1927 Sup., § 3791-1, which reads:

"If a written contract for the conditional sale of personal property be assigned by the vendor to secure a debt or other obligation, the assignee, in the absence

of a contrary intent expressed in the assignment, shall have the right to enforce all the vendor's remedies under the contract, and, if such contract and/or assignment thereof shall be filed as provided by law, the assignee shall have a lien upon the property covered thereby as against the vendor and his creditors and subsequent purchasers and encumbrancers, which lien may be enforced as a chattel mortgage is enforced.''

It, therefore, is immaterial whether appellant holds the notes and conditional sales contracts as pledgee or as purchaser.

The contest is waged principally over the question of whether the contract of June 11, 1927, is a conditional sales contract or a chattel mortgage. The trial court held that it is a chattel mortgage, and lacking an acknowledgment and affidavit of good faith, is void.

The contract, which is too long to set out in full herein, among other provisions, recites that it is a conditional sale contract entered into between the parties. One of the portions which the trial court concluded was in the nature of a provision of a chattel mortgage reads:

''Time is expressly of the essence of this contract and on the failure of the vendee to perform any of the terms and conditions hereof, or to pay any and all of said promissory notes representing the unpaid purchase price promptly as and when the same become due and payable, or should the vendee become insolvent or a voluntary or involuntary petition in bankruptcy be filed by or against the vendee or should a receiver be appointed for the vendee or said Bergonian Hotel or should the vendor deem itself in any manner unsecured the unpaid balance of the purchase price as evidenced by said promissory notes at such time then unpaid shall become immediately due and payable and the vendor may at its election take possession of said property and each and every part thereof with or without process of law, using all necessary force so to do and this contract may be forfeited and determined at its

election and all sums paid by the vendee shall be retained by the vendor as liquidated damages for such breach of contract and as rent for the use of said property, or the vendor may proceed to collect the unpaid purchase price then owing in such manner as it may elect.''

Under the above portion of the contract, it is stipulated that, in the event of default, the balance of the purchase price shall become immediately due and payable and the vendor is given two alternatives at its election; one, to take possession of the property, terminate the contract and forfeit all payments which had been made as liquidated damages; or two, to collect the unpaid purchase price then owing. The vendor is not given the right to both remedies. It could, at its election, take possession of the property, or collect the unpaid purchase price. It is clear that provision does not bring this case within the pronouncement in *West American Finance Co. v. Finstad,* 146 Wash. 315, 262 Pac. 636. In that case, we quoted approvingly from *Burroughs Adding Machine Co. v. Wieselberg,* 230 Mich. 15, 203 N. W. 160, and *Nelson v. Viergiver,* 230 Mich. 38, 203 N. W. 164. In the *Wieselberg* case, *supra,* among other things, the court said:

''Absolute liability for the full purchase price may be stipulated and enforced, but title may not be retained, possession reclaimed, and the full purchase price unpaid also be exacted, without having the instrument fall within security in the nature of a chattel mortgage.''

See, also, *Toledo Scale Co. v. Gogo,* 186 Mich. 442, 152 N. W. 1046, Ann. Cas. 1917E, 601; *Bailey v. Baker Ice Machine Co.,* 239 U. S. 268. Nor is that provision of the contract in any wise similar to provisions in the conditional sale contract before us in *Lahn & Simmons v. Matzen Woolen Mills,* 147 Wash. 560, 266 Pac. 697,.

the provisions of which were construed to be the provisions of a chattel mortgage.

In the last cited case, we also held that, as regards the passing of title and the election of remedies, and the fact that the intention of the parties must be gathered from all the language used in the contract, the agreements in the instrument there in question constituted a chattel mortgage and not a conditional bill of sale.

The contract also includes a provision that the vendee agrees to keep the property insured in a reliable insurance company, to be approved by the vendor, in such amount and against such losses and upon such conditions as may be approved by the vendor, loss if any to be payable to the vendor as its interest may appear, and requiring that such policies be delivered to the vendor, which might retain them until the full payment of the purchase price.

Such a provision is commonly found in conditional sales contracts. While this court has held that the vendee has no legal or equitable interest in the property (*Holt Manufacturing Co. v. Jaussaud,* 132 Wash. 667, 233 Pac. 35, 38 A. L. R. 1312), it at the same time held that, *in the absence of any agreement,* the loss caused by the destruction of the property shall fall upon the vendor. Such a clause has been upheld by the supreme court of Michigan in the *Gogo* case, *supra,* and in *Federal Commercial & Savings Bank v. International Clay Machinery Co.,* 230 Mich. 33, 203 N. W. 166, 43 A. L. R. 1245.

We are convinced that such provision does not render the instrument before us a chattel mortgage.

Another clause in the contract provides:

"In case the vendor shall employ an attorney to recover either the property or to collect any unpaid balance due under this agreement, the vendee promises

and agrees to pay in addition to the costs and disburse-ments incurred by the vendor such additional sum as the court may adjudge reasonable for attorneys' fees to be allowed in such suit or action, together with all expenses, costs and charges incurred by the vendor.''

Respondent has not cited any authority that such a provision changes a conditional sale contract into a chattel mortgage. We can see no valid reason why the vendee should not agree to be liable for attorneys' fees in addition to statutory costs, where it became necessary for the vendor to employ an attorney either to recover the property, or collect on any unpaid balance due under the agreement. It was allowed in such a contract in *Motor Contract Co. v. Van Der Volgen,* 162 Wash. 449, 298 Pac. 705.

The default clause, already quoted in full, which provides for liquidated damages by retaining all sums paid by the vendor as such, is also a clause commonly used in conditional sale contracts. It is not a provision common to chattel mortgages. We can see nothing in that provision making the contract a chattel mortgage.

There is a clause in the contract reading:

''The title of the vendor to the property herein described and said promissory notes may be sold or assigned by the vendor and the assignee shall succeed to all the rights and remedies of the vendor.''

It is to be noted that this clause empowers the vendor to sell the property *and* the notes. The necessary implication is that the vendor could not sell one without the other. It is a right which the vendor has, in any event. *State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 Pac. 340, 3 A. L. R. 235. Compare *Allis-Chalmers Mfg. Co. v. Hedlund Lumber & Mfg. Co.* 164 Wash. 296, 2 P. (2d) 708.

In the last cited case, we held that a certain

provision in the conditional sale contract was in violation of the law of this state as giving the vendor a right which could not be exercised under our law, but that such provision should be disregarded, and without it the contract was clearly one of conditional sale.

Having in view the manifest intention of the parties at the time of the execution of the instrument and theretofore, and the plain terms of the contract before us, we have no hesitancy in declaring it to be a conditional sale contract and not a chattel mortgage.

■ One of the grounds upon which the trial court denied relief to appellant was that no demand had been made for possession, and that appellant had not tendered to Berg the promissory notes given pursuant to the sale contract.

There is a provision in the conditional sales contract as follows:

"The vendee agrees not to sell or attempt to sell or dispose of said property or any part thereof or any interest he may have therein or incumber the same in any manner whatsoever, or permit any liens or incumbrances to accrue against the whole or any part thereof, or to remove the same from said Bergonian Hotel without the written consent of the vendor."

Another provision permits the vendor in the event of default to take possession of the property with or without process of law.

Inasmuch as the conditional sale contract was filed, as provided by statute, well within the ten days after execution and after delivery of possession of the chattels to Berg, it is plain that respondent had constructive notice of it, and was bound by the terms thereof. There was another provision in the contract to the effect that Berg would not sell or attempt to sell or dispose of the property or any part thereof or encumber the same in any manner whatsoever without

the written consent of the vendor. These provisions were violated when Berg gave the mortgages to respondent. The act of executing the mortgage and delivering possession to respondent amounted to a conversion. *Studebaker Bros. Co. v. Witcher,* 44 Nev. 442, 195 Pac. 334; *Kinkead v. Holmes & Bull Furniture Co.,* 24 Wash. 216, 64 Pac. 157.

Under such circumstances, no demand was necessary. *Armour v. Seixas,* 80 Wash. 181, 141 Pac. 308; *World Finance Co. v. Westlake Garage Co.,* 115 Wash. 45, 196 Pac. 586.

As to the point that no delivery of the notes signed by Berg was made to him, that is a matter which concerns only Berg, and is of no concern to respondent.

Appellant asks, in the event of reversal, that this court fix the damages on the record. The trial court made no findings as to the measure of damages, because this was an equity case. We conclude that the case must be remanded, with instructions to the trial court to proceed to hear evidence upon the question of damages to appellant and enter its judgment therefor. *Northern Life Insurance Co. v. Walker,* 123 Wash. 203, 212 Pac. 277; *Breithaupt v. Martin,* 153 Wash. 192, 279 Pac. 568.

The decree is reversed and remanded, with instructions to proceed in accordance herewith.

TOLMAN, C. J., PARKER, and MILLARD, JJ., concur.