[No. 30945. Department One. September 3, 1949.]

MAURICE MARKALL, *Appellant*, v. SMITHWAY MACHINERY COMPANY *et al., Respondents.*[1]

[1]Reported in 209 P. (2d) 449.

*McClure & McClure* (*Harold H. Price*, of counsel), for appellant.

*Koenigsberg & Oseran,* for respondents.

BEALS, J.—Plaintiff, Maurice Markall, and defendant Jose Lucientes are residents of California. Defendant O. P. Smith is, and for many years has been, a resident of Seattle, Washington.

Plaintiff instituted this action, alleging in his complaint that, March 12, 1945, he, as first party, and the defendants, as second parties, entered into a written contract (a copy of which is attached to the complaint), whereby the plaintiff agreed "to sell upon consignment" to the defendants, who agreed to purchase from plaintiff, a quantity of machinery, which was itemized in an exhibit attached to the contract. The contract contained the following provision:

"Vendees agree to pay to vendor for said property the sum of Twenty-two thousand, five hundred Dollars ($22,-500.00) as follows, to wit: Fifty per cent (50%) of the gross amount of all sales thereof, said 50% to be remitted to the vendor immediately upon receipt by the vendees of the proceeds of each and every sale thereof; that vendees agree to pay to vendor interest on the amounts of the principal sum remaining from time to time unpaid, until said principal sum is paid, at the rate of four per cent (4%) per annum."

By the terms of the alleged contract, the vendor agreed to deliver to the vendees a bill of sale for items sold by them, upon receipt by the vendor of fifty per cent of the sale price. The vendees acknowledged receipt of the property and agreed to keep the same in good order and to indemnify vendor for loss by fire or otherwise. The vendees were to retain possession of the property for a period of two years from the date of the alleged contract, and, if the vendor had not received the total purchase price of $22,500 at the end of that period, he could either enforce immediate payment of the then remaining unpaid balance or take possession of

the unsold machinery. The agreement stated that it was the intent of the parties that vendees should pay the vendor the full purchase price above referred to, unless vendor should elect to repossess the property or any portion thereof. The last paragraph of the agreement appears as follows:

"This agreement shall be deemed to have been entered into in the City and County of San Francisco, State of California, the day and year first above written.

Witness:                     [Signed]   M. Markall

_____      _____

Witness:                       Vendor

_____      [Signed]   J. M. Lucientes

Witness:                  _____

_____      _____

                                Vendees"

For a first cause of action, after alleging that the defendants were copartners, plaintiff alleged the execution of the contract above referred to; that the defendants had paid plaintiff, pursuant to the contract, the sum of $4,513.65; that, at the end of the two-year period, plaintiff had notified defendants that he elected to demand payment of the balance of the purchase price referred to in the contract; that defendants had refused payment; and that the amount claimed was due plaintiff from defendants.

By way of a second cause of action, plaintiff again alleged that the amount for which he sued, together with interest, was due him from defendants as a balance on an account for goods sold and delivered, adding:

". . . which said sum is the balance due under that certain contract hereunto attached and marked Exhibit 'A', to which is attached an itemized statement of the goods so sold and delivered."

No service of process was ever had upon the defendant Jose Lucientes, who made no appearance in the action.

Defendant Smith appeared and demurred to the complaint, and moved to make the same more definite and certain. In response to this latter motion, plaintiff filed copies of an identical letter written March 28, 1947, by Harold H.

Price, Esquire, plaintiff's attorney and a member of the bar of the state of California, to each of the defendants and to "Smithway Machinery Co., 212 13th Street, Sacramento, California."

Defendant Smith then answered the complaint, denying the allegations thereof, and particularly denying that he was indebted to plaintiff in any sum whatsoever.

The action was tried to the court, sitting without a jury, and resulted in the entry of findings of fact in favor of the defendants, followed by conclusions of law stating that the contract relied upon by plaintiff and introduced in evidence never came into existence as a binding contract; that the defendant Smith was not bound thereby; and that the action should be dismissed. The court then entered judgment dismissing the action, with costs to defendant Smith.

Plaintiff moved for a new trial, and, upon the denial of his motion, appealed to this court from the adverse judgment.

Appellant assigns error upon the court's findings of fact and conclusions of law in favor of the respondents; upon the refusal of the trial court to find in favor of the appellant; upon the court's refusal to enter judgment in appellant's favor; upon the entry of the judgment dismissing the complaint; and upon the denial of appellant's motion for a new trial.

In this opinion, we shall refer to respondent Smith as though he were the sole respondent in the action.

Pursuant to an oral agreement, respondent and Lucientes were partners engaged in business in the state of California as buyers and sellers of machinery. Lucientes resided in California and attended to most of the partnership business. Respondent resided in Seattle, where he was engaged in business on his own account, devoting only such attention as was necessary to the affairs of the partnership, which was known as Smithway Machinery Company.

The contract above referred to was prepared by Harold H. Price, Esquire, appellant's attorney, who, with local counsel, represented appellant at the trial of this action. Mr.

Price, testifying as a witness on behalf of appellant, stated that he prepared the contract, intending that it should be signed by appellant, by Lucientes (both of whom did sign the agreement), and by respondent, who, when the document was submitted to him for his signature, refused to sign.

It appears that appellant had been dealing in mining machinery in California and, at some time prior to March, 1945, had a large quantity of used mining machinery upon his hands which he desired to sell. After holding an auction, at which some of the machinery was sold, appellant discussed the matter with Lucientes and, as the result of conferences between them, the machinery was shipped to Sacramento, where it was placed on a vacant lot near the office of the partnership.

From time to time, some of the machinery was sold, fifty per cent of the proceeds being turned over to appellant.

In June, 1945, respondent became sole owner of the Smithway Machinery Company, which he conducted until June, 1946, when he sold it to his son, Sterling Smith, who operated the business as a sole trader until February, 1947, when he was adjudicated a bankrupt.

Sterling Smith testified that he informed appellant of his purchase of the business, by telephone, pursuant to respondent's directions, and also testified that he wrote to appellant, who denies receiving any information whatever from Sterling Smith.

Apparently, the trustee in bankruptcy of the Sterling Smith estate took possession of the machinery and disposed of it for the benefit of creditors. In any event, the machinery vanished.

It is not disputed that appellant was doing business as alleged in his complaint or that respondent O. P. Smith and defendant Lucientes were copartners doing business as Smithway Machinery Company until June, 1945, when respondent became sole owner of the business, or that he conducted the same until June, 1946, when he sold out to Sterling Smith.

It is also undisputed that Mr. Price, as attorney for appellant, prepared the contract dated March 12, 1945, above referred to, which was signed by appellant and by defendant Lucientes, and which contract respondent refused to sign, advising appellant, as found by the trial court, that "he would not enter into such a contract." The trial court found that appellant and defendant Lucientes "signed the said document with the intention that it would not come into existence as a contract until it was signed by the defendant, O. P. SMITH," which finding is strongly criticized by appellant, but is supported by competent evidence.

It appears that, approximately two months after refusing to sign the contract (all as found by the trial court), respondent went to Sacramento, where, with appellant and Lucientes, the three called upon Ralph H. Lewis, Esquire, the attorney for respondent and defendant, who prepared a contract (which was introduced in evidence) differing radically in its terms from the agreement Mr. Price had prepared. This contract, which was signed by respondent and by no one else, provided that title to the property should remain in appellant until sold or until the purchase price thereof, or of any particular items included in the inventory, was paid. The proposed contract differed in many particulars from that upon which appellant here relies.

From the record, it is uncertain whether Mr. Price received a copy of the proposed new agreement from Mr. Lewis or from appellant, but a copy was submitted to him and he discussed it with appellant. Mr. Price then wrote to Mr. Lewis, May 14, 1945, making some suggestions for modification of this agreement, the first paragraph of his letter reading as follows:

"Mr. Maurice Markall has submitted to me for approval the contract drawn by you between himself and Messrs. Smith and Lucientes, which you have prepared in lieu of the one earlier submitted by me."

Mr. Price also referred to the provision of the contract whereby appellant retained "title to the various items until such time as they are sold," and so forth. The letter concluded with the following paragraph:

"If you will please advise me of your approval of the suggested revisions and additions, I will have the new agreement prepared accordingly, or if you prefer, you may do so, incorporating the suggested changes and additions, and forward it to me for execution here by Markall."

Mr. Lewis acknowledged receipt of Mr. Price's letter, May 15th, stating that he had submitted Mr. Price's suggestions to respondent and defendant for their consideration.

May 23rd, Mr. Price wrote Mr. Lewis as follows:

"Will you kindly let me hear from you further regarding the contract between Markall Machinery Company and Smithway Machinery Company, concerning which you wrote me on May 15 last."

July 30, 1945, Mr. Price wrote Mr. Lewis, stating that a controversy had arisen between respondent and appellant, and referring to several matters which were in dispute. The first paragraph of the letter concluded with the following:

" . . . This was the original verbal agreement and it was incorporated in each of the several written agreements, one of which was executed by Mr. O. P. Smith, and another of which was executed by Jose Lucientes."

The letter then continued:

"Whatever other controversies arose in our attempt to consummate a written agreement, there was never a question with respect to the payment to Markall of 50% of the gross amount of sales."

In this letter, Mr. Price apparently recognized that no definite, complete contract had ever been agreed to and that no formal written agreement had been executed by the parties. Mr. Price's letter concluded as follows:

"A similar problem is presumably going to enter into all subsequent sales and it should therefore be settled at once. Unless your clients are willing to remit Mr. Markall's $400.00 immediately and agree to abide by the heretofore undisputed conditions of the contract, I shall be forced to take appropriate legal action, which I hope, with your cooperation, can be avoided."

Mr. Price, who was called as a witness by appellant, testified, in response to the following question by respondent's counsel:

"Q. At the time you wrote the letter of May 14, 1945, you didn't think there was any binding agreement between the parties as to this equipment—I mean that there was any written binding agreement between the parties, did you, at the time you wrote this letter of May 14th? A. I can't answer that. I don't know what was in my mind, other than what I have expressed in the letter. Q. At the time of July 30, 1945, when you wrote the letter, Defendants' Exhibit 6, you didn't think there was any binding written agreement between the parties, did you? A. I have no recollection as to what I thought."

Mr. Price's letters certainly suggest that no final agreement had been reached by the parties concerned.

When the first contract was signed by appellant and by defendant Lucientes, Sterling Smith, respondent's son, was also present. Lucientes and Sterling Smith both testified that, at this time, appellant was informed that Lucientes signed the contract with the understanding that the contract would not be binding unless respondent also signed it. The form of the contract, as prepared by Mr. Price, indicates beyond question that it was intended that respondent should execute the same with the other parties, a line having been drawn for his signature and another line for a witness thereto.

Respondent testified that he received the contract at his Seattle office and that he telephoned Lucientes, instructing him to inform appellant that he, Smith, would not sign it. Lucientes testified that he conveyed this information to appellant. In any event, appellant must have been aware that respondent had not signed the contract, and it appeared beyond question that, when the parties met at Sacramento, respondent told appellant that he would not sign the agreement prepared by Mr. Price.

Referring to the document prepared by Mr. Price, appellant testified:

"I showed—I always call him Joe [Lucientes]. I showed him the contract and I believe he kept it a day or two and

he signed it and he said he was going to send it—the other one up to Mr. Smith to sign, but I took the one that he signed."

It is of some significance that, in his letters to Mr. Lewis, Mr. Price suggested changes in the agreement as prepared by Mr. Lewis, but did not criticize the elimination of certain matters from the contract which he had prepared nor object to the following statement included in the Lewis contract:

"No personal judgment shall be rendered against them, or either of them, for the purchase price of any property not sold or disposed of by them hereunder."

Mr. Price testified that, when appellant handed him the draft of the contract prepared by Mr. Lewis, the witness obtained the impression that his client (appellant) and respondent and defendant had reached an entirely different agreement from the one he had embodied in the first contract. It must be assumed, however, that Mr. Price would have ascertained the true situation from his client before proceeding further in the matter.

In appellant's reply brief, his counsel suggests that respondent is liable to appellant because his partnership became a bailee of the property and is responsible to appellant for the value of the articles so delivered.

This theory was not suggested by appellant's counsel during the trial nor in appellant's opening brief before this court.

■ The following portions of Rule of Supreme Court 11, 18 Wn. (2d) 12-a, are pertinent here:

"Not less than ten days prior to the hearing, the appellant may also serve and file with the clerk of the supreme court a like number of copies of a printed brief, strictly in reply to respondent's brief. . . . But the appellant shall not be permitted to urge in any such reply brief or statement of additional authorities, or on the hearing, any grounds for reversal not clearly pointed out in his original brief."

■ This court has also refused to consider questions which were not presented before the trial court. In *Smith v. King County*, 28 Wn. (2d) 917, 184 P. (2d) 562, we said:

"Appellant cannot try the case in the lower court on the theory that respondent was an invitee and seek a reversal here because he was a licensee. [Citing *Lawson v. Helmich*, 20 Wn. (2d) 167, 146 P. (2d) 537, 151 A. L. R. 930, and *In re Corneliusen's Estate*, 182 Wash. 488, 47 P. (2d) 843.]"

We, accordingly, will not consider this matter, first suggested by appellant in his reply brief.

■ The trial court had the benefit of seeing and hearing the witnesses who testified at the trial, and the court's findings are amply supported by the record.

Appellant's assignment of errors raised merely general questions concerning the findings of fact signed by the trial court. The conclusions of law and the judgment follow logically from the findings made.

We find no error in the record, and the judgment appealed from is affirmed.

JEFFERS, STEINERT, MALLERY, and HILL, JJ., concur.