[No. 31190. Department Two. May 22, 1950.]

WALTER B. SCHROCK *et al.*, *Respondents and Cross-appellants*, v. H. B. GILLINGHAM *et al.*, *Appellants*.[1]

[1]Reported in 219 P. (2d) 92.

*A. O. Colburn* and *Moe & Huse,* for appellants.

*Preston, Thorgrimson & Horowitz* and *Jerome Williams,* for respondents and cross-appellants.

HILL, J.—This is the third time in a little more than two years in which we have had before us the question of who sustains the loss, as between the purchaser and seller of real property, when a third party handling the transaction embezzles the money received from the purchaser instead of delivering it to the seller. In each of the two prior cases, *Lieb v. Webster,* 30 Wn. (2d) 43, 190 P. (2d) 701, and *Angell v. Ingram,* 35 Wn. (2d) 582, 213 P. (2d) 944, the loss has fallen upon the purchaser, not because he was the purchaser but because he had executed escrow instructions directing the third party not to deliver the money to the seller until certain conditions had been performed by the seller. Before these conditions were met, the third party embezzled the money; and the loss fell upon the purchaser because, at the time of the embezzlement, the third party was holding the money pursuant to the purchaser's instructions and the seller was not entitled to receive it. The latter of these cases was decided only a few days before the instant case was argued in this court; but the *Lieb* case had been decided prior to the trial of the instant case, and the trial court applied the rule laid down therein and endeavored to determine whose agent the defaulting third party was at the time he embezzled each of the three different payments involved in the instant case.

The present litigation (excluding for the time being the issues raised by the second cause of action in the complaint and by the cross-complaint) is an action by Walter B. Schrock and his wife, who had sold their ranch in Okanogan county to H. B. Gillingham and his wife, to recover from

the latter the sum of $21,490 of the purchase price which the Gillinghams had delivered to D. J. MacGillivray, Jr., a realtor, and which the latter had embezzled.

The Gillinghams pleaded that MacGillivray was at all times the agent of the Schrocks, and also pleaded estoppel, novation and laches. The trial court granted the Schrocks judgment for $10,000, from which judgment the Gillinghams appeal. The Schrocks cross-appeal because of the court's failure to grant them judgment for the entire $21,490.

The material facts are set forth chronologically, with some indication of the significance attached to the various transactions by the parties and by the trial court.

John B. Corcoran, a real-estate broker associated with MacGillivray, was trying to sell the Gillinghams a ranch, and suggested that his brother-in-law, Schrock, had one that might meet the requirements of the Gillinghams. After some preliminary negotiations, Gillingham, on April 16, 1947, signed an offer of $155,000 and gave Corcoran (acting for MacGillivray) a check for $5,000 as earnest money. Corcoran went to Okanogan to present the offer to Schrock, who refused it but made a counter offer of $165,000. Corcoran telephoned to Gillingham in Spokane and, with his authorization, prepared an offer of $165,000, with $5,000 as earnest money. This writing was headed an "Agreement to Purchase," and the opening paragraph was as follows:

"THIS AGREEMENT made at Spokane, Washington, this 18th day of April, 1947 between H. B. Gillingham & Rachel C. Gillingham, Husband & Wife, herein called Purchaser and the principal for whom MACGILLIVRAY & Co., broker, is acting as agent, herein called the Seller."

The property was described as

"7000 Acres, more or less, . . . together with assignments & transfer of all Leases on approximately 10000 Acres, operated in connection with deed land, and 925 Head of cattle & other personal property. . . ."

The purchase price was to be paid as follows:

" . . . The sum of $5'000.00 earnest money this day paid to said broker; the further sum of $20,000.00 on the accep-

tance of this agreement by seller. The balance shall be paid in the following manner:

"It is understood that amount in cash equal to 30% of the purchase price is to be paid upon execution of a satisfactory contract and that the remaining unpaid balance is to be paid annually thereafter at the rate of 30% of the purchase price each year. . . ."

The Schrocks signed an acceptance of this offer, which acceptance contained the following language:

"I hereby approve and accept the sale set forth in the above agreement and agree to carry out all the terms thereof on the part of the seller. . . . I agree to pay forthwith to MacGillivray & Co. as a broker a commission of $3000.00, and upon the closing or specific enforcement of this transaction said broker may apply on such commission the earnest and/or purchase money paid to the extent of such commission. . . ."

Although the Schrock acceptance was dated April 19th, it appeared that the Shrocks had signed the acceptance before Gillingham signed the offer, although Gillingham had authorized Corcoran, by telephone, to make it.

The trial court concluded that as to the $5,000 earnest money both parties had, by the terms of the offer and acceptance, recognized that MacGillivray held the money as agent for the Schrocks. This $5,000 was embezzled by May 3, 1947; and the trial court held that the Schrocks could not recover the $5,000 or any part thereof from the Gillinghams.

By the terms of the "Agreement to Purchase," upon the acceptance of the offer by the Schrocks, an additional $20,000 was due from the Gillinghams. On April 29, 1947, MacGillivray and Corcoran attempted, without success, to collect the $20,000 payment from Gillingham; however, Gillingham did pay $10,000 at that time, and received a receipt for it as "Payment on Schrock Ranch." There was evidence, which the trial court believed, that Gillingham turned this $10,000 over to MacGillivray only after he had received definite assurance that it would not be paid to the Schrocks until the deeds and lease assignments had been executed and the transaction closed. This sum was embezzled by MacGillivray by May 3, 1947; and the trial court was justified in finding

that Gillingham had made MacGillivray his agent to hold the money until proper evidence of title was furnished and deeds and assignments made, and that, on the basis of the holding in *Lieb v. Webster, supra,* MacGillivray was holding the money for the Gillinghams and the Schrocks were not entitled to it at the time of the embezzlement.

There was evidence that at that time, April 29th, Gillingham sought to impose the same conditions relative to payment to the Schrocks of the $5,000 which he had delivered to Corcoran as an earnest-money payment; but it was the view of the trial court that MacGillivray could not change, without the knowledge and consent of the Schrocks, the basis or the terms on which MacGillivray had originally received that money.

The transaction was closed on May 13, 1947, at a meeting in MacGillivray's office. At that time, a formal contract of sale was executed by the parties and deeds and lease assignments were executed by the Schrocks. (These were all placed in escrow that same afternoon with the Washington Trust Company.) Mrs. Gillingham wrote a check for $34,490, which she made payable to MacGillivray & Co., and handed it to Corcoran. The Schrocks were present at the time the check was written and delivered, and, if they did not actually direct that it be made payable to MacGillivray, they at least permitted it to be delivered to him.

It was the view of the trial court, in which we concur, that the Gillinghams retained no control over the $34,490; the Schrocks were entitled to it without reservation, and MacGillivray received it and held it as the agent of the Schrocks and not of the Gillinghams. It was deposited in the MacGillivray trust account.

MacGillivray had received from the Gillinghams three payments aggregating $49,490, and was entitled to a $3,000 commission on the sale. After placing the contract, deeds, lease assignments, etc., in escrow, the Schrocks returned to MacGillivray's office in the late afternoon of May 13th to get their money. MacGillivray persuaded them to leave $490 with him to cover certain unspecified contingencies and gave them a check for $46,000 drawn on his trust account. It is

on this transaction that the Gillinghams base their claim of novation, at least in part.

It was then after banking hours. The Shrocks returned to their home in Okanogan that night, as the Gillinghams were to take possession of the ranch the next day and the Schrocks were to remove certain personal property. Schrock deposited the check in his Okanogan bank on May 14th, the day after he received it. On May 19th he was notified by his bank that the check had been returned n.s.f. He immediately went to Spokane, and there discovered for the first time that MacGillivray was in poor financial condition. On the morning of May 20th, before banking hours, he obtained a check for $25,000 from MacGillivray, it appearing that that was all he could get, although MacGillivray promised that he would pay the balance in twenty days. This, also, is part of the Gillingham claim of a novation.

Schrock immediately went to the bank and there met Gillingham, who also knew that the $46,000 check had been returned n.s.f. They learned that there was $34,124.51 in the MacGillivray trust account, and Gillingham offered to deposit enough in the account to enable Schrock to cash the $46,000 check, with the understanding that the money so deposited would apply on the purchase price of the property. Schrock did not agree to that proposal and, instead, cashed the check for $25,000.

MacGillivray was arrested on May 26th, and a trustee in bankruptcy was later appointed.

The Gillinghams had delivered $49,490 to MacGillivray. The Schrocks had received $25,000 of that amount, and it is conceded that MacGillivray was entitled to a commission of $3,000, which left a balance due the Schrocks of $21,490. Schrock first advised Gillingham in October, 1947, that he regarded him, Gillingham, as liable for the money paid to MacGillivray. In November a formal demand was made, and this action was commenced in February, 1948.

We have here an extensive record of some nine hundred pages and, in addition, the resourcefulness and ingenuity of counsel have produced lengthy opening briefs on both sides. After examining the record, it seems to us that this is pe-

culiarly a case in which the disagreement between the parties relates to the facts. The legal principles expounded and the authorities cited have little application unless they can be premised upon the particular state of facts for which the parties contend.

The trial court believed MacGillivray and Corcoran, instead of Gillingham, as to the terms and conditions under which Gillingham delivered the $10,000 to MacGillivray on April 29th. The court was justified in finding that Mac-Gillivray became the agent of the Gillinghams to hold that money until the transaction was closed, and that, while he so held it, he embezzled it. This finding brought the situation clearly within the rule laid down in *Lieb v. Webster* and *Angell v. Ingram, supra*; and the judgment as to the $10,000 must be affirmed unless, as contended, the Schrocks are estopped to maintain the action, or it is barred by laches, or there was a novation which relieved the Gillinghams from liability.

It is strenuously urged that when the contract was executed on May 13, 1947, receipt of $49,490 was acknowledged and provision made for the payment of the balance of $115,-510; that the Schrocks are therefore estopped to say that they did not receive the $49,490; and that to admit evidence to establish the fact that they had not received the $49,490 was a violation of the parol evidence rule.

That the recital of payment in the contract was not binding on the Schrocks, and that the facts as to payment might be shown, is supported by abundant authority. The cases generally draw a distinction between a contractual consideration, which cannot be varied by parol evidence, and an acknowledgment or a recital of something received. *Jones, Rosquist, Killen Co. v. Nelson,* 98 Wash. 539, 167 Pac. 1130; *Roberts v. Stiltner,* 101 Wash. 397, 401, 172 Pac. 738; annotation, 100 A. L. R. 17, " 'Contractual' consideration as regards parol-evidence rule"; 20 Am. Jur. 975, Evidence, § 1112; 32 C. J. S. 885, Evidence, § 953.

Nor is there merit to the claim that the Schrocks' acceptance of MacGillivray's check for $46,000 constituted a novation whereby the credit of MacGillivray was substi-

tuted for the credit of the Gillinghams; nor did the acceptance of the check for $25,000 and the promise of payment of the balance constitute a novation. In the absence of an agreement that the original obligation be extinguished and a new obligation substituted, the mere acceptance of a note or check of a third person does not effect a discharge of the original obligation by way of novation, but will be considered only as a conditional payment. 46 C. J. 591, Novation, § 32.

The evidence to support the claim of a novation was purely circumstantial and by no means conclusive. The trial court was entirely justified in its finding that the Schrocks at no time received a check or promise from MacGillivray in full payment of the moneys due them from the Gillinghams as the down payment under the contract of sale, and that any check received was as a conditional payment only.

The Gillinghams urge that they were prejudiced by Schrock's delay in presenting the $46,000 check for payment, it appearing that had it been presented on May 14th it would have been paid. It will be remembered that it was after banking hours on May 13th when the Schrocks received the check, and neither party knew at that time that MacGillivray was in financial difficulties nor that he had already embezzled the $15,000 that the Gillinghams had previously delivered to him. What constitutes laches depends upon the facts of the particular case. In the situation as the parties then knew it, Schrock was not guilty of laches by reason of his departure from Spokane the night of May 13th or his failure to arrange to have the check presented the following day to the bank on which it was drawn, nor because he deposited the check in his own bank for collection on May 14th.

It is conceded that Gillingham knew as soon as Schrock did, or sooner, that the check had been dishonored; but it is urged that if he had known then that Schrock was looking to him and not to MacGillivray for the $46,000, he could have protected himself by getting more money from MacGillivray that Schrock did. The Gillinghams' brief states:

"If Schrock really intended or expected to hold Gillingham liable, it obviously became his duty to at once notify

Gillingham to that effect after the check was returned n.s.f. so that Gillingham could take such immediate steps as were available to protect himself. Among the available steps was the threat of arrest. It is reasonable to conclude in view of the evidence that if the task of securing recoupment *at that time* from MacGillivray had been placed upon Gillingham he could have accomplished it. He lived in the same city with MacGillivray. He could have brought pressure unavailable to Schrock. A way of substantial recoupment was suggested and offered to Schrock which he declined. . . ."

Just how Gillingham could have obtained more from Mac-Gillivray is not apparent, except for the suggestion that he would have threatened to have MacGillivray arrested. The persuasive effect of such a threat seems to be highly speculative, and the maximum amount in MacGillivray's trust account after May 19, 1947, the date on which Schrock learned that the $46,000 check had been dishonored, seems to have been $34,124.54. It is true that Gillingham proposed depositing enough to make the $46,000 check good, thus clearing out the balance of $34,124.54 in the MacGillivray trust account. However, the effect of the judgment is to give the Gillinghams full credit for the payment of $34,490 made on May 13th. Anything secured from the bank over the $34,124.54 would have constituted an additional payment on the contract by the Gillinghams; therefore, we fail to see that they were in any way prejudiced by Schrock's failure to agree to Gillingham's proposal, even if we concede the propriety of the suggested procedure.

We agree with the trial court that no laches by the Schrocks which resulted in any material damage to the Gillinghams has been established. The Gillinghams complain that the n.s.f. check was not delivered to them until it was tendered during the trial, but we see no injury to them by that delay.

On the cross-appeal, we are satisfied that the facts support the trial judge in his holdings that it was established that the Gillinghams retained no control over the $5,000 delivered to MacGillivray as earnest money, nor over the $34,490 delivered to him at the time the transaction was

closed; that he was authorized by the Schrocks to receive those payments; and that the Gillinghams were justified in believing that he had such authority.

The Gillinghams make two assignments of error on evidentiary questions. One goes to the admission of a claimed self-serving declaration by Schrock on the question of MacGillivray's agency. The liability of the Gillinghams for the $10,000 is based upon the conditions he exacted when he delivered the check for that amount to MacGillivray, and not on anything Schrock said or did not say. Since the Gillinghams prevailed in their contention that MacGillivray was the agent of the Schrocks in receiving the other payments, a further examination of this question is unnecessary.

The second goes to the limiting of the cross-examination of MacGillivray on the matter of his promises concerning security for the payment of the $21,000 balance of the $46,000 represented by the n.s.f. check. (It will be remembered that MacGillivray delivered a check for $25,000 of that amount, which was cashed.) The trial court correctly ruled that statements made by MacGillivray subsequent to the time he delivered the $25,000 check and promised payment of the balance, were not material on the question of whether there was a novation at the time the smaller check was accepted.

The Gillinghams' request to reopen the case to take evidence as to the custom in Spokane that realtors receive all payments on behalf of the seller, was neither timely nor material, since as to the payments made, the trial court found against the Gillinghams only on the $10,000 item, and that on the basis that Gillingham's own conditions as to delivery made MacGillivray his agent until such conditions were met.

Certain contentions by the Gillinghams with reference to the way in which the $25,000 MacGillivray check which Schrock cashed should have been applied, have not been considered because made for the first time in the reply brief. Rule of Supreme Court 11, 18 Wn. (2d) 12-a; *Mark-*

*all v. Smithway Machinery Co.*, 34 Wn. (2d) 749, 757, 209 P. (2d) 449.

By their cross-complaint, the Gillinghams claimed damages in the amount of $29,800 for misrepresentations alleged to have been made by Schrock. The misrepresentations finally relied upon were that certain springs and water holes were on land owned by the Schrocks. The trial court apparently did not believe Gillingham's testimony nor that of his corroborating witnesses, and did believe that of Schrock. The trial court's finding that the claimed misrepresentations were not made is determinative of the issues raised by the cross-complaint, and we see no reason to disturb that finding. The judgment of dismissal on the cross-complaint is affirmed.

This leaves for consideration only the question of whether the Schrocks were entitled to recover attorneys' fees on both their first and second causes of action.

The contract which the parties signed on May 13, 1947, obligated the Schrocks to sell and the Gillinghams to purchase the property therein described, for $165,000, of which $49,490 "is to be paid on execution and delivery of this contract, the receipt of which is hereby acknowledged." The contract also contained this provision:

"Vendees agree to pay any and all costs and expenses incurred by Vendors in the enforcement of this agreement or the collection of payments due hereunder, including a reasonable sum as attorney fees in case an attorney be employed by Vendors in the enforcement of this agreement or any part thereof."

The Gillinghams insist that this provision in the contract is a unilateral agreement and relates only to payments thereafter to become due, and that the Schrocks are attempting to recover payments which became due prior to May 13, 1947, under the preliminary agreement.

We have heretofore seen that the recitals relative to the receipt of payments are not binding upon the Schrocks. The $10,000 for which the Schrocks recovered judgment is part of the $165,000 which the Gillinghams agreed by the contract to pay for the ranch. The parties had a right to

place in the contract any terms or conditions which were not unlawful or against public policy, and the agreement to pay attorneys' fees is valid and binding. *Motor Contract Co. v. Van Der Volgen*, 162 Wash. 449, 455, 298 Pac. 705, 79 A. L. R. 29; *Seaboard Securities Co. v. Berg*, 170 Wash. 681, 689, 17 P. (2d) 646, 92 A. L. R. 297; *Franklin v. Fischer*, 34 Wn. (2d) 342, 349, 208 P. (2d) 902. The reasonableness of the amount allowed on the first cause of action, to wit, the sum of $2,000, has not been questioned. `

In only one respect do we find it necessary to suggest a possible modification of the judgment entered. The Gillinghams made no assignment of error covering a judgment against them on the second cause of action, in the amount of $1,142.20, for the pro rata share of rentals and taxes due the Schrocks under the terms of the contract. In fact, one of the findings proposed by the Gillinghams was:

"The sum of $.......... is a reasonable amount to allow plaintiffs [Schrocks] as their attorneys' fees in prosecuting the Second Cause of Action."

On their cross-appeal, the Schrocks contend that they were entitled to attorneys' fees on this cause of action under the provision of the contract heretofore cited. The Gillinghams make no response to this contention in their reply brief, and it seems to us to have merit. The trial court should either allow attorneys' fees on the second cause of action or, if it intended that the $2,000 attorneys' fees allowed in the first cause of action should cover both the first and second causes of action, it should make the necessary changes in the findings, conclusions and judgment to indicate that fact.

While the Schrocks have asked attorneys' fees in this court, neither side has briefed or argued the question of whether this court can or should make an award for attorneys' fees for services on an appeal under such a contract provision, and for that reason we do not pass upon that question. See *Franklin v. Fischer, supra.*

Except as herein indicated with reference to the attorneys' fees on the Schrocks' second cause of action, the judg-

432

ment is affirmed. Neither party having prevailed upon this appeal except to the limited extent indicated, no costs will be allowed on the appeal.

ROBINSON, MALLERY, and HAMLEY, JJ., concur.

SIMPSON, C. J. (dissenting)—I dissent.
MacGillivray was at all times the agent of respondents.