[No. 10460. Department Two. February 28, 1913.]

Fred Hofreiter et al., Respondents, v. W. W. Schwabland et al., Appellants.[1]

Trover and Conversion—Trial—Instructions. In an action for the conversion of a house, built by partners with joint funds, upon the separate property of the plaintiff, and which, on dissolution of the partnership, was to be divided as personalty, the sole issue being whether defendant's half interest in the house was included in an exchange of properties and passed to the plaintiff, an instruction on the subject of common law fixtures, and casting the burden of proof of ownership of the house on the defendant, is misleading and erroneous.

Trover and Conversion—Measure of Damages. In an action for the conversion of a house, removed from plaintiff's land, the measure of damages is the value of the house at the time of its removal, with interest, and not the value of the use of the house on the premises from the time of its removal.

Appeal—Record—Written Instructions. Instructions wholly in writing are part of the record on appeal, without being incorporated in the bill of exceptions or statement of facts.

[1]Reported in 130 Pac. 364.

APPEAL—PRESERVATION OF GROUNDS—EXCEPTIONS. Exceptions to instructions specifying the paragraphs by number are sufficient.

Appeal from a judgment of the superior court for Benton county, Holcomb, J., entered September 28, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for conversion. Reversed.

*H. B. Noland*, for appellants.

*John E. Ryan* and *Grover E. Desmond*, for respondents.

FULLERTON, J.—The respondents as plaintiffs recovered against the appellants for the value of a dwelling house, alleged to have been wrongfully removed from certain lands of the respondents by the appellants and converted by the appellants to their own use. The facts out of which the controversy arises are in the main undisputed. On and prior to January 9, 1908, the respondent Fred Hofreiter and the appellant William Given were partners in a restaurant business, in the city of Seattle. They, at the same time, severally held contracts with the state of Washington for the purchase of certain lands, situated near the Columbia river, in Benton county. Being desirous of improving the lands, they, together with one Anthony Hofreiter, on the date above given, entered into a contract in writing, by the terms of which each of the parties agreed to advance a certain sum of money to be expended on the lands by Anthony Hofreiter in making improvements thereon and in bringing the lands under cultivation. The contract was indefinite as to its duration, but contained a clause providing that, upon its termination for any cause whatsoever, an inventory should be taken of all property then upon the land, "including machinery, pipes, buildings and fixtures," and the value of the same appraised and divided equally between the parties to the contract.

Acting pursuant to the agreement, the parties advanced considerable sums of money which were expended on the land

in the erection of buildings, the construction of irrigating works, and in preparing the land for cultivation. The buildings were erected on the tract belonging to the respondents, and consisted of a dwelling house, a barn, a house for a pumping station, and various outbuildings. The parties also acquired personal property of a considerable value. This consisting of a team of horses, with harness, fluming for irrigating purposes, and such machinery, implements and tools as are usually kept by farmers and gardeners.

After the business had progressed for a time, Anthony Hofreiter sold his interests to the respondent Hofreiter and the appellant Given. The respondent at the trial, in describing the interests in the property of the respective parties after this sale, used this language:

"The house referred to and for which I am claiming damages, was entirely constructed and built from funds contributed by defendant Given, Anthony Hofreiter and myself, and after Anthony sold out Mr. Given and myself were equal owners in the house. The pump, pump house, barn, fluming, teams, harness, machinery and equipment of every kind thereafter belonged to Mr. Given and myself equally. It had all been purchased from common funds."

Later on, Hofreiter and Given agreed to dissolve their partnership and divide their partnership property. As a basis for doing so, they valued the restaurant at twelve hundred dollars and the farm property at fifteen hundred dollars. After this appraisement had been made, Given offered Hofreiter his choice of properties, stipulating that the person taking the farm property should pay to the other one-half the difference between the appraised value of the two properties. Hofreiter chose the restaurant, and Given took the other property, paying Hofreiter one-half the difference between their appraised values.

The sole difference between the parties, and the sole question at the trial, was whether the house passed to Given with the other common property on the farm in the exchange.

Hofreiter testified that the house was not included in the property set over to Given, while Given testified that it was so included. In submitting this issue to the jury, the court gave therein, among others, the following instructions:

"(4)    The defendant Given contends that the ownership of the house in dispute was severed from the ownership of the land, not a permanent fixture thereon and that he and plaintiffs were joint owners thereof and at the time of the settlement he was given the house by plaintiff, I instruct you that the burden of proof as to the establishing of both of his contentions by a fair preponderance of the evidence is upon the defendant and if you believe from the evidence that the defendant has not proven that the ownership of the house was severed from the soil, and that he was expressly allowed the house by the plaintiff in the settlement, by a fair preponderance of the evidence then your verdict must be for the plaintiff.

"(5)    You are instructed that the original contract between the parties provided that all buildings on the land owned by the plaintiff herein was to be considered personal property as between the said parties, at least until such time as the contract should be by them terminated, and a division or distribution made.

"If, therefore, the evidence shows that the original contract shown here in evidence and not disputed, was terminated, then it is still incumbent on the defendant Given, to show by a fair preponderance of the evidence, that he became the owner of the building in question, and remained such until the time when it is alleged that he sold it and caused it to be removed from the land.

"(6)    In determining whether the buildings herein in dispute were personal property or part of the land to which it was annexed, I instruct that you shall be governed by the intention of the parties to make or not to make the same a permanent part of the land at the time of its erection, or at the time of any settlement, and in determining the intention of the parties you shall take into consideration besides their testimony, the purpose for which it was erected to be used, the size and character of the building, the manner of its annexation to the soil, its use in application to the property on which it was erected, and the effect its removal would have

on the land. If from the foregoing tests you decide it was the intention of the parties to make the same a permanent fixture to the land in the sense that buildings are considered permanent then you shall find that the building was part of the land.

"(8)　I instruct you that if you find for the plaintiff the measure of damages would be the value of the house and the value of the use thereof on the premises from the time of its removal to date."

Under the issues as made by the evidence, we are constrained to think each of these instructions erroneous and misleading. There was no dispute that as between the parties this house was personal property, as distinguished from a common law fixture, to the same extent that all the other property on the farms was personal property. Hofreiter himself testified that the house was built with their common funds, that it was erected on his particular land merely as a matter of convenience, that it was their common property at the time of the exchange, and his sole claim to the house is that it was awarded him in the exchange. Any reference to the doctrine of fixtures was therefore out of place and had a tendency to mislead the jury. So also, since Hofreiter was the plaintiff, and asserting the right to recover, the burden was upon him to establish by a preponderance of the evidence a right of recovery.

The second of the instructions is erroneous in that it places the burden upon Given to establish his ownership of the house. As we have stated there is no dispute that at the time of the exchange he owned a half interest in the house, and the sole question was whether he was given the other half interest in the exchange or whether his half interest went to Hofreiter. On this issue, since Hofreiter was seeking affirmative relief, the burden of proof was on him to establish the facts necessary to a recovery, not on Given to controvert his right.

The third of the instructions quoted (numbered 6) is erroneous in that it assumes that the house was possibly a fix-

ture, whereas, as we have stated, the law of fixtures had nothing to do with the issues. The house was owned jointly by the respondents and the defendant Given. An exchange of property was made by which the ownership of the house either passed to Hofreiter or passed to Given. If it passed to Hofreiter, then Given wrongfully removed it; if it passed to Given, he had an implied license to remove it within a reasonable time, and his removal of it was rightful and not wrongful. An instruction as to the law of fixtures, therefore, was not pertinent.

The fourth instruction is erroneous in that it does not lay down a correct rule for the measure of damages. This being an action for conversion, the measure of damages was the value of the house at the time of its removal, with interest at the lawful rate on such value from the time of the removal to the time of the trial. The value of the use of the house on the premises from the time of its removal to the time of the trial is not recoverable in this form of action.

There was no error in the rulings on the admission of evidence.

We have not overlooked the respondents' objections to the sufficiency of the record on appeal. But instructions given wholly in writing and filed in the cause are a part of the record and may be brought to this court over the certificate of the clerk; they need not be embodied in a bill of exceptions or statement of facts. Rem. & Bal. Code, § 395. The charge to the jury was in writing and the exceptions were taken "by specifying by numbers of paragraphs . . . the parts of the charge excepted to," and were sufficient under the statute. Id., § 384.

The judgment is reversed, and the cause remanded with instructions to grant a new trial.

Mount, Morris, Ellis, and Main, JJ., concur.