[No. 45-40289-2.    Division Two.    March 19, 1970.]

ANDREW DENNIS *et al., Respondents,* v. ELMO SOUTHWORTH
*et al., Appellants.*

116

Lee, Krilich, Lowry & Thompson and Thomas C. Lowry, for appellants.

Peterson & Haarmann and Robert H. Peterson, for respondents.

PEARSON, J.—Plaintiffs, Andrew Dennis and Barbara J. Dye (partners), brought this action claiming that in November of 1965 the defendant, Elmo Southworth, had sold them a D-8 tractor for $4,900. They claimed that the sale was confirmed by two written instruments dated June 15, 1966, wherein it was agreed that plaintiffs would do certain work for defendants and that one-half of the payment for the work would be in cash and the other half would be applied to the purchase price of the tractor. Plaintiffs claimed that they completed the work and were entitled to $3,050, which defendant refused to pay.

Plaintiffs contended that on October 31, 1966 the defendant wrongfully took possession of the tractor while plaintiff Dennis was engaged in another job and that they were damaged by the market value of the tractor in the sum of $7,000 and that they were losing $144 per day because of the conversion. Consequential damages of $15,000 were sought.

Defendants contended that the D-8 tractor had not been sold but had been leased to the plaintiffs, with an option to purchase, which option had never been exercised. Defendants also contended that the plaintiffs had commenced work for the defendants under a contract defendants had with the United States Forest Service, but had failed to substantially complete the work, had abandoned the job,

and had refused to return the tractor, keeping it for their own use. Defendants cross claimed for $9,408, representing a claim for 98 working days on the basis that $12 per hour was a reasonable rental value for the tractor. Defendants claimed also that they were required to expend $1,520 to complete the subcontract they had with plaintiffs on the United States Forest Service project.

Defendants also sought to recover $494.36 they were required to pay as cosigners on a promissory note obligation to the Puget Sound National Bank, and sought to recover $350 for some other equipment allegedly sold to plaintiffs and not paid.

The evidence concerning the nature of the transaction was in substantial dispute as was the degree of completion of the contracted work. Plaintiffs' testimony tended to show that despite the designation of the one document (exhibit 1) as a lease-option agreement, that in fact it was intended as a sales agreement. Certain omissions, discrepancies and ambiguities in exhibit 1 were relied upon by plaintiffs to justify the use of parol testimony, showing that the transaction was in fact a conditional sale. Defendant's testimony generally contradicted this parol testimony.

With reference to the contracted work described in exhibit 2, plaintiffs' testimony tended to show that the work was substantially done and that complete performance was excused by defendant's failure to make progress payments under the contract. Defendant's testimony was contradictory as to the degree of completion of the work.

In general, the trial court accepted plaintiffs' version of the disputed facts, finding (1) that the transaction was a conditional sale, rather than a lease-option; (2) that plaintiff had substantially performed the forest service contract and that complete performance was excused by defendant's breach of contract; (3.) that defendant had wrongfully converted the D-8 tractor and had refused to return it on demand, thus giving plaintiff a right to consequential damages.

The court computed the damages as follows:

|  |  | Damages |
|---|---|---|
| (1) | Contract price $3,760, less $795, representing approximately 20 per cent not completed. | $2,965.00 |
| (2) | Market value of converted tractor, $6,950, less $4,900 owing defendant | 2,050.00 |
| (3) | Consequential damages computed on a $1,200 per month rental for 5 months | 6,000.00 |
| | Total | $11,015.00 |
| | Less credit for $494.36 paid by defendant | 494.36 |
| | Net judgment in favor of plaintiffs | $10,520.64 |

Defendants' cross complaint was dismissed.

Defendant has assigned as error virtually all of the trial court's findings of fact and the refusal of the trial court to enter his proposed findings. To review each individual finding would unduly prolong this opinion. Our review of the record convinces us that there was ample evidence to support the factual findings made and we limit our review to the claimed legal errors.

Did the trial court err in admitting parol evidence, tending to show that the transaction was intended as a sale of the tractor, rather than a lease-option?

Plaintiffs' exhibit 1 was a printed document entitled "LEASE with Customer's Right to Purchase." The form described as "Customer's Copy" was a carbon with blanks which had been completed in defendant's handwriting. This exhibit showed a purchase price of the D-8 tractor of $4,900, plus sales tax. It provided that if the option was exercised within 60 days of delivery, 100 per cent of the rental would apply to the purchase price and 80 per cent if the option was exercised after 60 days. The balance could be paid over 18[1] months, at a financing charge customarily charged by "Seller on other Conditional Sales Contracts for

---

[1]This blank was not filled in on the customer's copy, but this could have been a failure of the carbon paper.

similar types of equipment." The document was signed by both parties and dated June 15, 1966.

Plaintiffs' copy of the contract contained no rental amount, while the original retained by defendant (defendant's exhibit A) had this provision written in slightly darker ink: "Payments to be one half of Teeley Creek contract stations 45 thru 87-17." (The trial court found that this rental provision had been written in by defendant after the agreement was signed by the parties and therefore was not a part of the contract.)

Paragraph 13 of the "lease" form provided that the agreement was not an agreement to purchase unless written notice was given to defendant of the option to purchase.

Contemporaneously with the execution of exhibit 1 or A, the parties signed another printed form with blanks completed in defendant's handwriting, entitled "Proposal and Contract." (Plaintiffs' exhibit 2—defendant's exhibit B). By this document, the defendant engaged plaintiff to clear stations 45 through 87-17 of all brush, stumps and debris for a forest service road which defendant was engaged to build for the United States government. This document allowed 80 cents (per foot) and provided for progress payments "on release of ten stations or more by engineer." It then contained this provision: "[O]ne half of all payments to be retained by E. Southworth *to be applied on purchase of tractor*." (Italics ours.)

Here again, there were discrepancies in wording between plaintiffs' copy of this contract (exhibit 2) and defendant's copy (exhibit B). The discrepancies had no particular significance except for a variation in the blank where the price for the work was entered. Plaintiffs' copy recited that the work was to be completed for 80 cents, while defendant's copy recited 80 cents per foot.

The work was "to be inspected and released by forest service engineer according to prime contract." There was no provision as to who was to obtain this inspection and release.

The trial court allowed a substantial amount of parol evidence to be introduced in an effort to determine the true agreement between the parties. For example, the court permitted the plaintiffs and an independent witness, Mr. Boyce, to testify that defendant had stated at the time the "lease" form was signed, that the word "lease" meant nothing, that the form was the only one available, and that the transaction was intended as a sale of the tractor. The court also permitted testimony as to the conduct of the parties, both before and after the agreements were signed, to aid in the interpretation of the agreements. Finally, the court construed the "lease" agreement and the "proposal and contract" together, in arriving at its conclusion that the transaction constituted a conditional sale.

■ It is elementary contract law that the primary factor to be considered in determining the meaning of a written contract is the intention of the parties. Where the terms of the contract taken as a whole are plain and unambiguous, the meaning will be deduced from its language alone, without resort to parol evidence or any other aids to construction. But if the language of a contract is ambiguous, or has material omissions, it becomes the duty of the court to determine the intention of the parties by viewing the contract as a whole and considering all of the circumstances leading up to its execution, including the subject matter and the subsequent acts and conduct of the parties. *See Boeing Airplane Co. v. Firemen's Fund Indem. Co.*, 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R. 984 (1954).

■ Parol evidence is admissible to determine the intention of the parties, explain ambiguities, supply omissions or prove whether or not oral agreements were or were not merged in a written contract. *Corinthian Corp. v. White & Bollard, Inc.*, 74 Wn.2d 50, 442 P.2d 950 (1968).

■■ Parol evidence is admissible to show the circumstances under which several instruments were executed where the several instruments make up or are part of a particular transaction. *Moore v. Gillingham*, 22 Wn.2d 655, 157 P.2d 598 (1945). Where agreements are composed of

several instruments, they should be construed together insofar as they are not inconsistent. *Paine-Gallucci, Inc. v. Anderson,* 41 Wn.2d 46, 246 P.2d 1095 (1952).

In this case, the "lease" form contained one serious omission—its failure to recite a rental amount. The option provisions contained no date within which the option had to be exercised. These omissions, in themselves, warranted the trial court in admitting and considering parol evidence and in construing both the "lease" form and the "Proposal and Contract" as a part of the same transaction. (It was the latter document that required one-half the payments thereunder to be applied to the purchase price of the tractor.)

Was the trial court justified, under the evidence, in concluding that the agreements constituted a conditional sale?

A conditional sale is a sale in which the vendee receives the possession and right of use of the goods sold, but the transfer of title to the vendee is made dependent upon the performance of some condition, usually the full payment of the purchase price. *Hafer v. Spaeth,* 22 Wn.2d 378, 156 P.2d 408 (1945). Such an agreement need not be in any particular form or language and may be partly oral. *Beatty v. Western Pac. Ins. Co.,* 74 Wn.2d 530, 445 P.2d 325 (1968). An agreement entitled "lease" may in fact be a conditional sale, depending upon the true intention of the parties. *See* Annot. 92 A.L.R. 297, 323-326 (1934); *Seaboard Sec. Co., Inc. v. Berg,* 170 Wash. 681, 17 P.2d 646 (1932); *also see* 175 A.L.R. 1360 (1948).

We believe the evidence supported the trial court's conclusion that the parties entered into a conditional sale of the tractor. There is no question that, except for several months during the winter of 1966 when the tractor had been left by plaintiff in a steep ravine where it had fallen, the plaintiffs had actual possession of the tractor between November of 1965 and October 31, 1966. It was also established without dispute that plaintiffs, with defendant's knowledge, had removed the tractor from the ravine prior to execution of the agreements, put extensive repairs to it,

and painted plaintiffs' partnership name on it, all without any objection from defendant.

Plaintiffs' intention to enter into a conditional sale of the tractor is evidenced by (1) their repeated testimony that the proceeds from the forest service road job constituted the "down payment" for the tractor, and (2) by the fact that the terms of the "Proposal and Contract" applied one-half of the Teeley Creek proceeds to the "purchase of tractor."

Defendant urges that the "lease" required written notice of exercise of the option to trigger the sale. Since the court found, with good reason, that the parties had earlier entered into a sale agreement when possession was first transferred in November of 1965, no written notice of plaintiff's intent to purchase was necessary. Also, the absence of a time limit for the exercise of the option was a sufficient indication that the parties did not consider the option provisions pertinent.

Plaintiffs had the duty under the "lease" to insure the equipment and pay taxes thereon. This factor is consistent with a conditional sale as is defendant's right to repossess it in the event of a default.

■ Defendant also contends that the trial court made an unjustified reformation of the contract, in holding the transaction as one of conditional sale. If, indeed, the trial court did reform the instruments before it, such conclusion was justified under the evidence on grounds of mutual mistake or unilateral mistake on plaintiff's part and inequitable conduct on defendant's part. Under such circumstances, the court would be justified in reforming the instrument to conform with the intention of the parties. Restatement of Contracts § 505 (1932); *Kaufmann v. Woodard,* 24 Wn.2d 264, 163 P.2d 606 (1945); *McKelvie v. Hackney,* 58 Wn.2d 23, 360 P.2d 746 (1961).

In this regard, the trial court found that plaintiff Dennis was uneducated and inexperienced in business as compared to defendant Southworth, and that defendant misled the

plaintiffs in the construction of the contracts. (Finding of fact 8.) The instruments were prepared by defendants and were properly construed in favor of plaintiffs.

Defendant claims that it was error for the trial court to admit and consider certain "self-serving" evidence. One such item was the act of plaintiff Dennis in painting "A & B Logging" on the tractor, when it was removed from the ravine in early 1966. This evidence, when considered in light of defendant's knowledge of the act, and his failure to protest, was in our view relevant and admissible to show that both parties considered that the tractor had been orally sold in November of 1965.

Likewise, the court permitted Mr. Dennis' probation officer (Dennis was on probation from a conviction for larceny) to testify that Dennis in early 1966 had reported to him that he was indebted on the purchase of a tractor. The court was aware of the self-serving nature of this declaration. However, Dennis had a legal obligation to report purchases to his probation officer. There was no controversy at the time and no reason for Dennis to lie. The statements were not made with any view toward a court contest with defendant. *See Green v. Fuller,* 159 Wash. 691, 294 P. 1037 (1930); 31A C.J.S. *Evidence* § 216, at 594 (1964).

■ With reference to the trial court's findings, (1) that the plaintiff had not breached his contract to perform the work, (2) that he had been expelled from the job by defendant before he could complete it, and (3) that defendant had breached the agreement in several respects, the evidence was sharply contradictory. We think those findings were based upon substantial evidence and must be sustained. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Lastly, defendant questions the award of consequential damages in addition to the market value of the tractor as an improper award in an action for conversion.

On November 2, 1966, plaintiffs' attorney wrote a letter to defendant demanding return of the tractor, advising him that he could avoid further consequential damages by re-

turning the tractor in good condition on or before November 3, 1966. No response was made to this letter.

After determining, upon expert testimony, that the fair market value of the tractor at the time of the conversion was $6,950, the trial court determined that its fair rental value was $1,200 per month. This finding was based not only upon plaintiffs' testimony, but also upon that of the defendant, Mr. Southworth, who testified in support of his cross complaint. The court allowed 5 months rental at $1,200 per month or $6,000. There was testimony that defendant removed the tractor from a worksite where he knew Dennis was employed. There was testimony that work was available for at least the winter of 1966-1967.

■ As a general rule, damages for conversion of personal property are measured by the fair market value at the time of the conversion. *Anstine v. McWilliams,* 24 Wn.2d 230, 163 P.2d 816 (1945); *Hofreiter v. Schwabland,* 72 Wash. 314, 130 P. 364 (1913).

However, under some circumstances, a party will be allowed consequential damages for a wrongful conversion in addition to the fair market value of the property. One case allowing the reasonable rental value was *Colorado Kenworth Corp v. Whitworth,* 144 Colo. 541, 357 P.2d 626 (1960). In that case, a truck was sold to plaintiff under a chattel mortgage and later wrongfully repossessed because of an alleged default in payment. When the court found that there had been no default, plaintiff was allowed both the value of the truck and its reasonable rental value. The Colorado court considered the known use of the vehicle for hauling freight and the fact that both parties were aware of the consequences of the taking at the time of the wrong.

We hold that where, as here, the plaintiff is unable to obtain a replacement tractor, because of his financial circumstances, and where defendant is made aware that consequential damages would commence at the time of the conversion, the trial court is justified in allowing consequential damages represented by the loss of profits or the

reasonable rental value of the equipment for a reasonable time.

Since there was testimony that work was available for this type of tractor through the winter of 1966-1967, we cannot say as a matter of law that the court was in error in allowing the damages for 5 months. Nor is defendant's objection to the allowance of this item of damage sustained on the grounds that it was not pleaded. Plaintiff had pleaded consequential damages because of loss of profits. The trial court allowed a trial amendment to include the claim for rental value. This matter was within the trial court's discretion and we find no abuse under those circumstances.

Defendants also contended that the trial court should not have allowed the 80 per cent compensation to plaintiffs for stations 40-45, since there was evidence that Dennis had to do little clearing in those areas. While the trial court might have reduced the percentage for these stations which had been partially cleared by someone else, we think the court was justified in finding that 80 per cent of the work had been done by the plaintiff on 4,700 feet of the stations.

Finally, defendants have assigned as error the refusal of the trial court to grant a new trial on grounds of newly discovered evidence. In support of the motion, defendant submitted affidavits tending to impeach plaintiffs. We agree with plaintiff that the impeachment matters were related to collateral issues and in any event the proffered evidence could have been ascertained by the exercise of due diligence and presented to the trial court at the time of the trial. It was not an abuse of discretion to refuse the new trial request. *Garratt v. Dailey,* 46 Wn.2d 197, 279 P.2d 1091 (1955).

The trial court must be commended for cutting through the morass of conflicting testimony and conflicting theories and reaching the merits of this controversy.

Judgment affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.