[No. 1930–3.   Division Three.   August 12, 1977.]

MAXWELL'S ELECTRIC, INC., *Respondent*, v. HEGEMAN–
HARRIS COMPANY OF CANADA, LTD., ET AL,
*Appellants.*

Patrick A. Sullivan and Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll, for appellants.

Alphus R. Christensen and Randall & Danskin, for respondent.

MUNSON, C.J.—This appeal arises out of construction activities connected with the 1974 International Environmental Exposition held in Spokane, Washington (EXPO '74). The respondent, Maxwell's Electric, Inc., brought this action against Hegeman–Harris Company and Washington Sportservice, Inc., because it was not paid for performing two portions of work: (1) the electrical hookup of specific rides in the amusement area; and (2) electrical work in connection with the hot water tank in the toilet of building 38.

Appellant, Washington Sportservice, and Maxwell's Electric, entered into a contract whereby Maxwell's Electric was to perform certain construction work for Washington Sportservice at the EXPO site. The contract specified that Hegeman–Harris was the construction consultant for Washington Sportservice. Hegeman–Harris acted as construction consultant for other companies and also as a general contractor in its own right at the EXPO site.

Initially, Maxwell's Electric required any variations from the contract (change orders or extras) to be approved in writing by its electrical contractor, Mr. Collins. As the opening of EXPO approached and the atmosphere became more hectic, Mr. Collins told the foreman for Maxwell's Electric to perform any work requested of him by Mr. Sternberg, Hegeman–Harris' president. Mr. Sternberg then informed the foreman for Maxwell's Electric that Mr. Dubois had the authority to order any work in the amusement park area. Mr. Dubois subsequently orally ordered the electrical hookup of the rides under dispute here.

On June 12, 1974, Mr. Sternberg and the office manager for Maxwell's Electric, Mr. Pinter, met to determine the amount of money still owed Maxwell's Electric by all the companies for which Hegeman–Harris acted as construction consultant. On work performed at EXPO, Maxwell's Electric was usually paid 90 percent of the amount due when the work was billed out, and the 10 percent retainage was paid at the completion of all the work. After considerable discussion, Mr. Sternberg and Mr. Pinter agreed upon the amounts to be paid Maxwell's Electric. Mr. Sternberg gave Mr. Pinter several partially completed forms which Maxwell's Electric was to complete in order to obtain the retained money. Apparently Mr. Sternberg had expected Mr. Pinter to use one form for each company which still owed money to Maxwell's Electric. However, on work to be paid for by Washington Sportservice, Mr. Pinter completed a different form for each specific unit or units of work, rather than one form for all work to be paid for by Washington Sportservice.

This dispute arises because Maxwell's Electric thought the amounts agreed upon at the June meeting did not include money owed Maxwell's Electric for the work in the hookup of the rides and the electrical work in building 38. In contrast, Mr. Sternberg and Hegeman–Harris thought that these amounts included *all* work performed by Maxwell's Electric. After the forms were completed, Maxwell's Electric was paid the amounts reflected on the

forms. Later, when Hegeman–Harris refused to pay the additional money, Maxwell's Electric brought this action. The trial court rendered judgment for Maxwell's Electric; Hegeman–Harris and Washington Sportservice appeal.

The appeal involves two basic issues: (1) whether, in ordering the hookup of specific amusement rides, Hegeman–Harris acted as an agent for an undisclosed principal, Washington Sportservice, and (2) whether the trial court properly construed documents executed by the respondent as receipts, rather than releases affording full accord and satisfaction.

Appellants contend the trial court's conclusion of law No. 3.6,[1] holding Hegeman–Harris an agent for an undisclosed principal, is not supported either by substantial evidence or by the law.

Substantial evidence supports the trial court's finding that Hegeman–Harris functioned in numerous capacities at EXPO '74, including construction consultant for Washington Sportservice. Appellants not only fail to challenge this finding, but agree that Hegeman–Harris, in its dealings with Maxwell's Electric, acted as an agent for Washington Sportservice and for other disclosed principals and as an independent contractor. Therefore, the fact that Hegeman–Harris functioned in multiple capacities, including agent for several disclosed principals, is established.

The disputed work was performed just prior to or shortly after the opening of EXPO '74. Apparently in addition to the work originally contracted, there were numerous extras, changes and other last–minute work. It was very hectic with every company wanting its work completed first and everyone putting in long hours. In fact, the foreman for Maxwell's Electric testified that the Saturday after EXPO opened he worked 19 hours, plus he put in several 12–, 14–, and 16–hour days. Undoubtedly, this frenzied atmosphere

---

[1] "In ordering the work represented by invoice Exhibit No. 3, defendant Hegeman–Harris acted as an agent on behalf of defendant Washington Sportservice, Inc. as its undisclosed principal."

was not limited to these parties and the work involved herein, but permeated every aspect of the opening of EXPO. Unfortunately, such an atmosphere acted as a stimulus to the circumstances leading to this suit.

This same atmosphere was reflected by the delegation of supervisory tasks for work performed by Maxwell's Electric. Initially, the foreman for Maxwell's Electric took orders from Mr. Collins, an electrical contractor for Maxwell's Electric. As the opening of EXPO drew closer, Mr. Collins instructed the foreman to also do any work authorized by Mr. Sternberg. Thereafter, Mr. Sternberg informed the foreman of Maxwell's Electric to perform any work in the amusement area authorized by Mr. Dubois.

It is undisputed that Mr. Dubois orally authorized Maxwell's Electric to hook up the amusement rides under dispute here. The question, then, is: when Mr. Dubois gave that authorization, were he and Hegeman–Harris acting as agents for a disclosed principal, *i.e.,* Washington Sport-service?

██ "If the other party has no notice that the agent is acting for a principal, the one for whom he acts is an undisclosed principal." Restatement (Second) of Agency § 4(3) (1958). *Accord,* 3 Am. Jur. 2d *Agency* § 307 (1962). *See Matsko v. Dally,* 49 Wn.2d 370, 301 P.2d 1074 (1956); *Chapman v. Ross,* 152 Wash. 262, 277 P. 854 (1929). Both the agent and the undisclosed principal are liable on such a contract. Restatement (Second) of Agency §§ 186, 322 (1958); 3 Am. Jur. 2d *Agency* § 307 (1962); *cf. Matsko v. Dally, supra; Gnash v. Saari,* 44 Wn.2d 312, 267 P.2d 674 (1954); *Chapman v. Ross, supra.* However, such liability is in the alternative; the third party must elect whether to hold the agent or the undisclosed principal (once its identity is known) liable for the obligation. *Pennsylvania Cas. Co. v. Washington Portland Cement Co.,* 63 Wash. 689, 116 P. 284 (1911); *Turnbull v. Shelton,* 47 Wn.2d 70, 286 P.2d

676 (1955); *Chapman v. Ross, supra;* Restatement (Second) of Agency §§ 336, 337 (1958).[2]

Granted, this is not the usual case of an undisclosed principal. With the opening of EXPO, construction completion was proceeding at a frantic pace, with everyone involved under pressure to get all the work done so that everything would be operable for the fair. Because of the time limitation and because Hegeman–Harris was acting in different capacities (as agent for several disclosed principals and as independent contractor), the foreman for Maxwell's Electric undoubtedly was not always aware for which principal the work was ordered, and justifiably so.

Even after the work was completed, Maxwell's Electric was unclear as to which company (Hegeman–Harris or Washington Sportservice) was to pay for specific portions of the work. In discussing the billing procedure of Maxwell's Electric for work not within its written contracts with either Washington Sportservice or Hegeman–Harris, Mr. Pinter, office manager for Maxwell's Electric, stated:

> Q You got some checks from Sportservice and some from Hegeman, didn't you? A That's correct. Q So what you are telling me is it didn't make any difference to you who paid the check, you put it all on this one ledger, is that right? A That's correct, because I did not know until I got the check who was going to pay for that. I was told to bill everything to Mr. Sternberg and that's what I did, and as to who was going to pay them, I did not know until I received the check from Mr. Sternberg as to whether it was a Hegeman–Harris check or a Washington Sportservice check.

Since Hegeman–Harris, through its different capacities, was responsible for insuring that the electrical work was completed, Maxwell's Electric had a right to rely upon Hegeman–Harris' agents to coordinate and to designate the work to be performed. Likewise, Maxwell's Electric had a right to rely upon Hegeman–Harris to be certain that

---

[2]The alternative liability was reflected by the trial court's conclusion of law entitling Maxwell's Electric to judgment "against either defendant Hegeman–Harris or defendant Washington Sportservice, at plaintiff's election," for the amount of the hookup of the amusement rides and for judgment being rendered only against defendant Hegeman–Harris.

Maxwell's Electric was paid for all work performed by the appropriate principal.

Granted, Maxwell's Electric undoubtedly knew that much of the work performed was for one of several disclosed principals, rather than for Hegeman–Harris as principal. In this case, the fact that Maxwell's Electric was aware that Hegeman–Harris was an agent for several disclosed principals is insufficient to warrant a conclusion that Maxwell's Electric knew that, when Hegeman–Harris ordered the hookup of the amusement rides through Mr. Dubois, it was acting for Washington Sportservice. On the contrary, the evidence presented, including evidence of the hectic atmosphere and the confusion at that time, would more likely support a conclusion that Hegeman–Harris was acting for an undisclosed principal, who has now been identified as Washington Sportservice.

Appellants assert Maxwell's Electric should have realized that, because of the contract between Hegeman–Harris and Washington Sportservice for work on the amusement area, any work ordered for the amusement area was ordered with Washington Sportservice as the principal and that Mr. Dubois was an agent for Washington Sportservice; therefore, any work ordered by him was for Washington Sportservice. The record does not indicate that Washington Sportservice was the only company that contracted with Maxwell's Electric to perform work on the amusement area, nor is there any evidence that Maxwell's Electric knew that Mr. Dubois was employed as a construction consultant by Washington Sportservice, rather than Hegeman–Harris. Thus, appellants' assertions do not provide a basis upon which it can be said that Maxwell's Electric knew the work was ordered for the disclosed principal, Washington Sportservice. Under these circumstances, we hold the trial court did not err in concluding Hegeman–Harris acted for an undisclosed principal, Washington Sportservice, in ordering the hookup of the amusement rides.

The second basic issue is whether the trial court erred in concluding the documents which comprise exhibit 11 were

receipts, rather than releases, and did not constitute full accord and satisfaction.[3] Appellants contend there is not substantial evidence to support the trial court's above conclusions and the trial court improperly admitted parol evidence.

With the exception of exhibit 11K, each document of exhibit 11 states: "This release constitutes full and final payment for all work performed at EXPO '74." The documents specify sums ranging from $27.26 to $3,519.88. After the June 1974 meeting between Mr. Sternberg and Mr. Pinter, Maxwell's Electric executed the documents and returned them to Hegeman–Harris, whereupon Maxwell's Electric was paid the sums agreed upon at that meeting with checks issued by both Washington Sportservice and Hegeman–Harris.

The trial court entered a finding of fact, unchallenged here, that none of the documents included the disputed work on the amusement rides or building 38. This finding was supported by Mr. Pinter's testimony that the figure discussed at the meeting did not include the $860 bill for the hot water tank in building 38 or an additional group of amusement rides. Furthermore, Mr. Sternberg testified that at the meeting he thought the amount Mr. Pinter said was owing on building 38 was $700–$800 less than he had anticipated. Mr. Pinter also testified that the documents were merely releases for the retained amounts for specific groups of invoices, but were not payment for all work performed by Maxwell's Electric. This testimony, in conjunction with the trial court's unchallenged findings to that effect[4] provide substantial evidence to support the challenged conclusions of law.

---

[3] "3.2 The documents which comprise Exhibit No. 11 are receipts rather than releases.

"3.3 Taken singly or together, the documents which comprise Exhibit No. 11 do not constitute an accord and satisfaction for all work performed at Expo '74 by plaintiff for defendants or either of them."

[4] "2.14 Each of the different amounts in the documents which comprise Exhibit No. 11 was intended to relate, and does relate to a particular unit, or

Appellants also contend that the trial court improperly relied upon parol evidence, in that the court considered parol evidence to determine, not only the intent of the parties, but also to clarify the meaning of the documents; and further that the court erred in considering parol evidence to interpret the documents because they were releases, not receipts.

■■ If the documents were receipts (and therefore not contracts), parol evidence was properly admissible to explain or to contradict the terms. *Schrock v. Gillingham*, 36 Wn.2d 419, 219 P.2d 92 (1950); *Kilbourne v. Kilbourne*, 156 Wash. 439, 287 P. 41 (1930); *Donovan v. Hallowell*, 140 Wash. 312, 248 P. 412 (1926); *Jones, Rosquist, Killen Co. v. Nelson*, 98 Wash. 539, 167 P. 1130 (1917). If the documents were releases[5] containing plain unambiguous language, parol evidence would be admissible to vary its terms only with fraud, false representation, overreaching or mutual mistake. *Metropolitan Life Ins. Co. v. Ritz*, 70 Wn.2d 317, 422 P.2d 780 (1967); *Hawaiian Ins. & Guar. Co. v. Mead*, 14 Wn. App. 43, 538 P.2d 865 (1975); *accord, Donovan v. Hallowell, supra; Shannon v. Prall*, 115 Wash. 106, 196 P. 635 (1921). However, as with any contract, if the documents were ambiguous, parol evidence would be admissible to determine the parties' intent. *Grant County Constructors v. E.V. Lane Corp.*, 77 Wn.2d 110, 459 P.2d 947 (1969); *Dennis v. Southworth*, 2 Wn. App. 115, 467 P.2d 330 (1970); *Cherberg v. Peoples Nat'l Bank*, 15 Wn. App. 336,

particular units, or work for which it is the retainage amount and does not relate to all work performed by plaintiff for defendants at Expo '74.

"2.15 Each of the documents which comprise Exhibit No. 11 was intended by the plaintiff to refer and relate only to that unit of work, or those units of work, the retained amounts of which equal the amount in the document, and each of the documents which comprise Exhibit No. 11 was intended to be a receipt for final payment on the specific unit or units of work to which each related by amount and not as a release for all work performed by plaintiff for defendants at Expo '74."

[5]A release is a contract reflecting the negotiations between the parties. *Schrock v. Gillingham, supra; Donovan v. Hallowell, supra; Shannon v. Prall*, 115 Wash. 106, 196 P. 635 (1921).

549 P.2d 46 (1976). Furthermore, parol evidence is admissible to show the circumstances under which several documents were executed as one transaction. *Dennis v. Southworth, supra.*

■ Since all the documents were executed in the same transaction, they should be construed together. *Lynch v. Higley,* 8 Wn. App. 903, 510 P.2d 663 (1973); *Dennis v. Southworth, supra.* In so viewing the documents, it is apparent that an ambiguity exists. The statement within each document that it was for all work at EXPO makes the documents ambiguous and inconsistent, particularly when construed together. Each individual document could not act as a full release for *all* work Maxwell's Electric performed for the appellants. Therefore, parol evidence was admissible to clarify the ambiguity and to supply the circumstances which surrounded the execution of the documents. There was conflicting evidence on the issue of the parties' intent. The trial court properly considered this evidence, found and concluded that the parties intended that the totals of the documents merely reflected the total amount of retained money for specific units of work, rather than the total amount still due and owing Maxwell's Electric by the appellants. The court did not contradict or vary the terms of the release forms; it merely clarified that they related to specific units of work.

Appellants additionally contend that the trial court improperly considered parol evidence in interpreting the documents because they were in reality releases, rather than receipts. This contention is not well taken. As noted above, regardless of whether the documents were receipts or releases, parol evidence was admissible. After considering the parol evidence to determine the parties' intent regarding the ambiguous documents, the trial court concluded the documents were receipts, rather than releases. Such conclusion is supported by substantial evidence, the court's unchallenged findings, and the law. We find no error.

Notwithstanding the court's determination of the nature of the other documents, appellants contend exhibit 11K is a final release and constitutes full accord and satisfaction for all work performed on building 38. Appellants base this contention on the fact that this is the only document which specifically refers to any particular work.

Exhibit 11K was executed with the other documents comprising exhibit 11, and should be construed in conjunction with them. *Lynch v. Higley, supra; Dennis v. Southworth, supra.* The trial court concluded that the documents were receipts, rather than releases, and did not constitute full accord and satisfaction for all work performed. This conclusion applies equally to exhibit 11K. The trial court found that the documents related to particular units of work, rather than all work performed, and that none of the documents included the disputed work on building 38.

■ Furthermore, the evidence presented fails to indicate that exhibit 11K represented a settlement of a disputed claim by the parties. Sternberg testified he thought the figure quoted by Pinter for building 38 was $700–$800 low. Pinter testified that he told Sternberg the agreed figures did not include all work for building 38. (At the time of the June meeting, Hegeman–Harris had already been billed for the disputed amount on building 38.) There is no evidence that the figure in exhibit 11K is a compromise of a disputed claim. *Teel v. Cascade–Olympic Constr. Co.,* 68 Wn.2d 718, 415 P.2d 73 (1966); *Eagle Ins. Co. v. Albright,* 3 Wn. App. 256, 474 P.2d 920 (1970). Therefore, appellants claim that, at least, exhibit 11K is a release and full accord and satisfaction for all work on building 38 is not well taken.

Judgment affirmed.

GREEN and McINTURFF, JJ., concur.