IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN CARVILLE and JANE DOE CARVILLE, husband and wife and the marital community comprised thereof, | ) ) ) | No. 80106-6-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) ) | |
| JOHN RODIUS, an individual d/b/a JOHN WAYNE SPECIALTY, | ) ) ) | |
| | ) | |
| Respondent. | ) ) | |
| | ) | FILED: September 23, 2019 |

HAZELRIGG-HERNANDEZ, J. — Jon Carville seeks reversal and vacation of a judgment for damages based on the reasonable rental value of a piece of heavy machinery. He raises several arguments in support of his appeal, but chiefly argues that the court used the improper measure of damages for a conversion claim and the award was not supported by substantial evidence. Because the measure of damages was permitted for that cause of action and sufficient evidence supported the amount of the award, we affirm.

FACTS

John Rodius brought suit against Jon Carville, alleging that Carville had refused to return a 2002 John Deere 200CLC tractor that Rodius owned. The complaint included claims for breach of contract, conversion, trespass to chattels,

and tortious interference with a business contract; a request for replevin; and a request for "compensatory and general damages as may be proven at trial."

In his trial brief, Rodius identified his relief sought as "[j]udgment for damages related to loss of use of the 2002 John Deere 200 CLC Tractor in an amount to be proven at trial" as well as "[j]udgment for damages related to loss of business." He argued in the brief that he was entitled to "damages associated with loss of use and/or unrealized profits[,]" and cited the following passage from Potter v. Washington State Patrol:

> Generally, the measure of damages for conversion is the fair market value of the property converted . . . An owner is also entitled to loss of use damages for the period of time during which the owner was wrongfully deprived of the converted property . . . Finally, consequential damages may be available in some circumstances. Dennis v. Southworth, 2 Wn. App. 115, 124, 467 P.2d 330 (1970) (allowing damages for the loss of profits or reasonable rental value of converted property).

165 Wn.2d 67, 85–86, 196 P.3d 691 (2008) (citations omitted).

At a bench trial in April 2018, Rodius testified that he had taken a "200 size excavator" to Carville's property to perform some work in late August 2016. The excavator remained on the property while the work was ongoing because the machine was too large to move easily. He testified that the last time he had possession of the excavator was in September or early October of 2016, when he was refused entry onto Carville's property.

Rodius testified about the effect that the loss of use of the excavator had on his business. He explained that the excavator was "a very versatile machine" that he used "every single day, almost, in everything I do[,]" including digging stumps, logging, stacking brush, loading containers, and building roads. He said that he

typically used the excavator in 80 percent of his jobs, which equated to 80 percent of his revenue.

He testified that he had five jobs lined up before he lost possession of the excavator that he was unable to perform without it. At one job, he testified that he would have harvested 12 loads of cedar and earned $20,000. At another, he testified that he would have harvested 40 loads of logs and built a mile of road, for which he would have been compensated $50,000. He was unable to say how many jobs he had lost because he did not want to waste customers' time by pursuing work he would not be able to complete without the machine. Rodius also testified that he would normally ship out one container of wood per month, which would earn him a net profit of $20,000 to $40,000, depending on the species of wood. He said that he had only been able to do this once since losing possession of the excavator by renting another machine. He testified that he had rented machines to do jobs at least 12 times. He said that a comparable machine cost $2,600 to rent for a weekend, or "sometimes they will rent a 200 size machine for about $12,000 a month, plus the additional fees that come with it." He testified that he had spent a total of $50,000 renting machines to replace the excavator.

During the trial, Carville requested a two-hour continuance to attempt to locate a subpoenaed witness who had not appeared in court to testify. The court indicated that it would allow the witness to testify after the lunch break, but said that "if [the witness] isn't here at one o'clock, he is not testifying." After the lunch break, Carville informed the court that the witness still had not arrived and asked for "as many minutes as the [c]ourt will allow me to call him repeatedly." The court

responded, "You had the entire lunch break. He is two and a half hours late. This is not your fault that he is not here, but we are not going to wait for him any longer."

Rodius argued in closing about the amount of expected profit he had lost in the absence of the excavator and the rental rates of substitute machines. He argued that any lack of specificity did not mean that he was not entitled to damages and that there was no testimony that his numbers were inflated, unrealistic, or inaccurate.

In an oral ruling,[1] the court found that it could not "reasonably and accurately calculate damages based upon lost profits given the evidence presented here." However, the court noted that "[t]he law is pretty clear that there is more than one way of calculating damages for loss of use of a chattel, and one of those is the rental value of a similar chattel, in this case a similar piece of equipment." The court accepted Rodius' testimony of the monthly rental cost of a similar machine and awarded damages to Rodius of $12,000 per month from September 20, 2016 until the day the excavator was returned. A judgment was subsequently entered in the amount of $229,200.

Carville filed a motion for reconsideration, elimination of the award of damages, and a new trial under CR 59. The court denied the motion. Carville timely appealed the judgment and order denying motion for reconsideration.

---

[1] Written findings of fact and conclusions of law are not of record with this court.

DISCUSSION

Carville contends that the trial court erred in ordering damages based on the reasonable rental value of the excavator, refusing a continuance when his witness did not appear, and denying his motion for reconsideration or new trial.

I.  Damages

A.  Standard of Review

On appeal of bench trials, "'respondents are entitled to the benefit of all evidence and reasonable inference therefrom in support of the findings of fact entered by the trial court.'" Mason v. Mortg. Am., Inc., 114 Wn.2d 842, 853, 792 P.2d 142 (1990) (quoting Lidstrand v. Silvercrest Indus., 28 Wn. App. 359, 364, 623 P.2d 710 (1981)).  When a trial court has weighed the evidence in a bench trial, our review is limited to determining whether substantial evidence supports the trial court's findings of fact and, if so, whether the findings support the conclusions of law. City of Tacoma v. State, 117 Wn.2d 348, 361, 816 P.2d 7 (1991). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the truth of the finding. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).  "[I]t is not the function of an appellate court to substitute its judgment for that of the trial court or to weigh the evidence or the credibility of witnesses." Davis v. Dep't of Labor and Indus., 94 Wn.2d 119, 124, 615 P.2d 1279 (1980). We review questions of law and conclusions of law de novo. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

B. Notice

Carville first contends that the trial court's use of the reasonable rental value as a measure of damages was inappropriate because he did not receive adequate notice that this measure would be considered. He argues that Rodius' complaint only identified "significant business loss" as the source of his damages, and Rodius did not request damages based on the reasonable rental value. Rodius responds that his complaint and trial brief were sufficient to apprise Carville of his request to be "made whole for the year and a half he was deprived of access to his property."

Carville cites two authorities in support of this argument. Civil Rule 8(a) requires pleadings to contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader deems the pleader is entitled." He also cites Lewis v. Bell for the proposition that, "[a]lthough inexpert pleading has been allowed under the civil rule, insufficient pleading has not. A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests." 45 Wn. App. 192, 197, 724 P.2d 425 (1986). In his argument in reply, he also cites the following language from Kirby v. City of Tacoma: "[a] party who does not plead a cause of action or theory of recovery cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along." 124 Wn. App. 454, 472, 98 P.3d 827 (2004) (quoting Dewey v. Tacomma Sch. Dist., No. 10, 95 Wn. App. 18, 26, 974 P.2d 847 (1999)).

"Under our liberal rules of procedure, pleadings are primarily intended to give notice to the court and the opponent of the general nature of the claim

asserted." Lewis, 45 Wn. App. at 197. Because their purpose is to allow trial courts to properly decide cases on the merits, rather than to "erect formal and burdensome impediments to the litigation process[,]" pleadings are to be liberally construed. State v. Adams, 107 Wn.2d 611, 620, 732 P.2d 149 (1987).

In Lewis, the court found that the pleadings were insufficient to provide notice to the defendants that the plaintiffs were seeking relief for an alleged tortious assault when the only cause of action pleaded in the complaint was the tort of outrage, and all affidavits and memoranda submitted to the court addressed issues involving outrage and not assault. 45 Wn. App. at 197. In Kirby, the court found that the necessary elements of a First Amendment claim could not be fairly inferred from pleadings that did not contain the terms "First Amendment" or "free speech." 124 Wn App. at 470-471 (citing Dewey, 95 Wn. App. at 23). In Adams, the Washington Supreme Court found that the pleadings provided sufficient notice of the State's intent to seek a money judgment, even though its original pleadings did not seek such relief, when its brief in support of summary judgment stated, "[a]t a minimum, a judgment against the employees for the amount of their overpayments should be entered." 107 Wn.2d at 620.

Here, Rodius stated his claims and request for monetary damages in his complaint, and specified in his trial brief that he sought damages related to loss of use and loss of business. This specification did not constitute a new cause of action or theory of recovery. Carville cites no authority for the proposition that pleadings must provide notice of the measure of damages that the court will use to calculate the requested relief. "Where no authorities are cited in support of a

proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). This argument fails.

C. Election of Remedies

Carville next contends that the use of the reasonable rental value as a measure of damages is barred by the election of remedies doctrine. He argues that Rodius elected to pursue lost profits rather than reasonable rental value as the measure of damages, and therefore any claim for reasonable rental value is barred.

The election of remedies doctrine exists to prevent double recovery for the same wrong. Bremerton Cent. Lions Club, Inc. v. Manke Lumber Co., 25 Wn. App. 1, 5, 604 P.2d 1325 (1979). "It seeks to prevent a party from asserting inconsistent positions in order to recover more than the value of the harm suffered." Id. A party is not bound by an election of remedies unless two or more remedies exist at the time of the election, the remedies are repugnant and inconsistent with each other, and the party to be bound has chosen one of them. Lange v. Town of Woodway, 79 Wn.2d 45, 49, 483 P.2d 116 (1971). If a party pleads different and additional grounds for resort to the same remedy, the election of remedies doctrine does not apply. Barber v. Rochester, 52 Wn.2d 691, 694–95, 328 P.2d 711(1958) (holding that the trial court erred in requiring an election between two different grounds for rescission of a contract).

Here, as in Barber, the plaintiff pleaded two different grounds for the same remedy: monetary damages. Thus, the election of remedies doctrine does not apply.

### D. Substantial Evidence

Carville also contends that the trial court's award of damages based on the reasonable rental value was not supported by substantial evidence. "'Generally the appropriate measure of damages for a given cause of action is a question of law, reviewed de novo.'" Shoemake ex rel. Guardian v. Ferrer, 168 Wn.2d 193, 198, 225 P.3d 990 (2010) (quoting Womack v. Von Rardon, 133 Wn. App. 254, 263, 135 P.3d 542 (2006)). However, the amount of damages awarded under a specific measure is a discretionary determination for the trier of fact, provided it falls within the range of relevant evidence. Womack, 133 Wn. App. at 262.

Generally, the appropriate measure of damages for conversion of personal property is the fair market value of the property at the time of the conversion. Dennis, 2 Wn. App. at 124. However, in some instances, a party may be awarded consequential damages represented by lost profits or the reasonable rental value of the equipment for a reasonable time in addition to the fair market value of the property. Id. at 124–25 (holding that the trial court was justified in allowing consequential damages where the plaintiff was unable to obtain a replacement for the converted tractor due to his financial circumstances and the defendant was made aware that consequential damages would commence at the time of the conversion).

"The guiding principle of tort law is to make the injured party as whole as possible through pecuniary compensation" without conferring a windfall. Shoemake, 168 Wn.2d at 198 (quoting 16 David K. DeWolf & Keller W. Allen, Wash. Practice: Tort Law and Practice § 5.1, at 172 (3d ed. 2006)). Although "damages must be proved with reasonable certainty[,]" this doctrine "is concerned more with the fact of damage than with the extent or amount of damage." Mutual of Enumclaw Ins. Co. v. Gregg Roofing, Inc., 178 Wn. App. 702, 715, 315 P.3d 1143 (2013) (quoting Lewis River Golf, Inc. v. O.M. Scott & Sons, 120 Wn.2d 712, 717, 845 P.2d 987 (1993)). Once the plaintiff establishes the fact of the loss by a preponderance of the evidence, they will not be required to prove an exact amount of damages to recover. Id. at 715.

The court heard testimony that Rodius had operated his own company performing logging and woodwork for over 30 years. It heard him testify about the expected lifetime and maintenance of machines like the excavator. He testified that he rented machines to replace the excavator on at least twelve occasions. He specified the cost to rent the same type of excavator as the one he owned per weekend, per hour with an operator, and per month without an operator. The record on appeal does not show that this testimony was contradicted. The court also specifically noted that it "was left with an abiding conclusion that Mr. Rodius was being truthful when he testified today, in all respects." Regarding the issue of damages, the court stated:

> Mr. Rodius testified that he determined what it would cost to rent a 200 size machine, that was his testimony . . . 200 size machine, that's what was unlawfully withheld from him, was a John Deere 200 size machine, and the number Mr. Rodius gave was $12,000 a month. I

accept that. I believe him . . . that would be what the rental cost would be.

Under Dennis, the court was permitted to order consequential damages of lost profits or reasonable rental value in addition to the return of the excavator as proper damages for conversion. The court did not err in using this as the appropriate measure of damages. Turning to the sufficiency of the evidence for the amount of damages, the court expressly found Rodius to be a credible witness regarding the rental cost of the same type of excavator that he owned. A rational, fair-minded person could conclude that this rental valuation would be the same for Rodius' machine, which he testified was in working order. The evidence was sufficient to support the amount of damages imposed.[2]

II.    Motion for Continuance

Carville contends that the trial court erred in denying his motion for a continuance when his subpoenaed witness did not appear to testify. He argues that this prevented him from having a fair trial and that Rodius would not have been prejudiced by the delay. Carville's only citation to any authority in this section is the argument that "[a] new trial is warranted under CR 59(a)(1) and (9)."

The Rules of Appellate Procedure require appellants to provide an "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6).

---

[2] Carville also contends that the trial court abused its discretion in denying his motion for reconsideration. Because we have found that Carville received sufficient notice of the claims and remedies sought, the court applied a permissible measure of damages, and sufficient evidence supported the amount of damages imposed, the court necessarily did not abuse its discretion in denying the motion for reconsideration.

"The purpose of the rule and related rules 'is to enable the court and opposing counsel efficiently and expeditiously to review the accuracy of the factual statements made in the briefs and efficiently and expeditiously to review the relevant legal authority.'" State v. Cox, 109 Wn. App. 937, 943, 38 P.3d 371 (2002) (quoting Hurlbert v. Gordon, 64 Wn. App. 386, 400, 824 P.2d 1238 (1992)). Consistent with this premise, "[w]e do not consider conclusory arguments that do not cite authority." West v. Thurston County., 168 Wn. App. 162, 187, 275 P.3d 1200 (2012).

Because Carville has failed to support his second assignment of error with sufficient argument and legal authority, we decline to consider it.

III.    Attorney Fees

Rodius contends that he is entitled to attorney's fees on appeal because the appeal is frivolous. "Under RAP 18.9(a), we can award attorney fees for the filing of frivolous appeals." Stiles v. Kearney, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). An appeal is frivolous if it presents no debatable issues upon which reasonable minds could differ and it is so lacking in merit that there was no reasonable possibility of reversal. In re Marriage of Foley, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). Any doubts as to whether the appeal is frivolous should be resolved in favor of the appellant. Pub. Emps. Mut. Ins. Co. v. Rash, 48 Wn. App. 701, 706, 740 P.2d 370 (1987).

Here, although Carville does not provide adequate support for some of his arguments, his appeal as a whole is not so devoid of merit as to be frivolous. The request for attorney's fees under RAP 18.9(a) is denied.

Affirmed.

WE CONCUR: